Argued January 9, accused reprimanded April 18, petition
for rehearing denied May 14, 1974

In re Complaint as to the Conduct of
## CHARLES O. PORTER, Accused, *Petitioner.*
521 P2d 345

*Charles O. Porter,* Eugene, argued the cause and filed a brief in propria persona.

*Richard Smurthwaite,* Eugene, argued the cause for the Oregon State Bar. With him on the brief were William F. Frye, Eugene, and Douglas L. Minson, Portland.

PER CURIAM.

The accused is charged with five separate violations of Disciplinary Rule 7-107 (F), which is as follows:

"(F) A lawyer or law firm associated with a civil action may quote from or refer to public records, but shall not during its investigation or litigation make or participate in making an extra-judicial statement for public communication that relates to:

(1) Evidence regarding the occurrence or transaction involved.

(2) The character, credibility, or criminal record of a party, witness, or prospective witness.

(3) The performance or results of any examination or tests or the refusal or failure of a party to submit to such.

(4) His opinion as to the merits of the claims or defenses of a party, except as required by law or administrative rule.

(5) Any other matter reasonably likely to interfere with a fair trial of the action."

The accused was retained by the husband of a woman who perished in the Cascade Mountains from

hypothermia while taking wilderness survival training provided by Northwest Outward Bound School, Inc. While investigating and litigating the matter for his client, the accused is charged with having made five separate statements concerning the matter to the news media which he reasonably could have expected to be communicated to the public by the media and which were so communicated.

The accused is charged with saying on September 11, 1971, that the adverse party had sequestered a witness whom he had been unable to talk to and that "we are attempting to use the majesty of the law to do what common decency should have required to be done."

The accused is also charged with disclosing on September 17, 1971, the testimony of a witness, given by deposition which was taken by the accused, which disclosure related to evidence regarding the occurrence or transaction which was under investigation.

He is charged with telling the media on September 24, 1971, that "our evidence shows that the girls were not told anything about getting chilled. That's the basis for our suit—that they weren't instructed properly, if at all, about the dangers, the diagnosis and the treatment of hypothermia," and "[e]ven if they [referring to Northwest Outward Bound personnel] had instructed the girls, it's clear they did not get the message through to three of them—not just one of them, but three of them."

He is charged also with telling the media on September 29, 1971, that the claim on behalf of his client would be pressed, but that he believed the adverse party would be willing to make an out-of-court settlement after it had investigated the facts.

.The fifth cause charges that on June 18, 1972, which was two days prior to the time the case was set for trial, the accused told the media that the defendant in the action had made an offer of settlement, but that the offer was not adequate and the case would therefore proceed to trial.

The accused admits that he was associated with the matter in question as the attorney for the husband of the deceased and that as to the first four charges, he made the statement to the media which are attributed to him in each instance, that he reasonably could have expected the statements to be communicated to the public, and that they were so communicated. As to the fifth charge he admits he made the statement to the media, but denies that he reasonably could have expected the statement to be communicated to the public.

The trial committee dismissed the first four charges against the accused because it found that DR 7-107 (F) was not in effect at the time of the alleged conduct set forth in those charges. The committee found the accused not guilty of the fifth charge because it found that the accused could not reasonably have expected his statement to be communicated to the public. As a result, the trial committee recommended to the Board of Governors of the Oregon State Bar that the proceedings be terminated.

The Board of Governors rejected the recommendations of the trial committee and found the accused guilty of all charges and recommended to this court that he be given a public reprimand. The accused then filed a petition to review the findings and recommendations of the Board of Governors.

■ The first matter to be disposed of is the action of the trial committee in recommending the dismissal of the first four charges against the accused. DR 7-107 (F), under which the accused was charged, went into effect when approved by this court on November 30, 1971, which was after the actions complained of in those charges. However, DR 7-107 (F) was substantially the same as its predecessor, which was known as DR 7-107 (G) and which was in effect at the time the accused did the acts in question. The accused suffered no inconvenience because of the amendment changing the section designation, and dismissal of the charges is not merited on that basis. The error was not even known to the parties until it was apparently discovered by the trial committee about the end of the hearing. To the accused's credit, no attempt is being made by him to make such a claim in this court on that basis.

■ Petitioner's primary defense is that he did not *willfully* violate the disciplinary rule. While the complaints against the accused alleged his actions "constituted willful misconduct," there is nothing in the rule which requires that the conduct there prohibited be committed willfully. "Willful" wears many coats and can mean anything from a simple intention to do an act to doing an act with a malicious and evil intent. *Starr v. Brotherhood's Relief and Compensation Fund,* 268 Or 66, 518 P2d 1321 (1974); *State v. Wilcox,* 216 Or 110, 116-17, 337 P2d 797 (1959). The accused contends that the term, as used here, means that the Bar must prove that he had actual knowledge of the disciplinary rule and intentionally violated it. While he admits that a copy of the rules was sent to him by the Bar, he denies that he ever read the rule which is here in question and that he was aware of what it contained. He denies

he intended to violate the rule and stated that he would not have made the statements prohibited by it had he known of the rule. "Willfully," as used in the complaint, means nothing more than that the accused intentionally and voluntarily made the remarks with the knowledge that they might be published. It has nothing to do, as used here, with an evil intent to violate Bar rules. If ignorance of the rule could vitiate prosecution, the policing of the Bar for the protection of the public and litigants would undoubtedly be immeasurably more difficult than it is.

■■ The accused also contends that the disciplinary rule under which he is charged is for the purpose of preventing an unfair trial of the action involved, and that there is no proof that the first four communications would have tended to prejudice such a trial because they were made prior to the actual filing of the case. He argues that the lapse of time between the statements and the trial would be so great that prospective jurors would have forgotten the publications. The exhibits indicate that the matter was of considerable interest in Lane County, which was the county in which the case would have been tried. The case was eventually settled and there is no way of proving what effect the publication of the statements had. It is our opinion that prejudice or unfairness is incapable of absolute proof and the only criterion that can be used is whether the published statements would tend to prevent a fair trial. We agree with the accused that the protection of the fairness of the trial is the principal purpose of the disciplinary rule. However, it is our conclusion that the statements made by the accused would tend to prevent a fair trial and that the accused's contention is not well taken. Such continual haranguing

of the public through the news media about the virtues of his client's case and the vices of the opposition would tend to have had some effect and was certainly unprofessional.

■ The accused next contends that the evidence is clear and uncontradicted that he could not have reasonably expected his statement which was the subject of the fifth charge to have been published. The evidence indicates defendant was walking through the Lane County Courthouse when he was accosted by an acquaintance of long standing who was a reporter for a local newspaper and who was accompanied by a representative of Associated Press. The conversation was brief and the accused admits he made the statement attributed to him. Both of the news people testified that neither is sure which one asked the accused about the case. The accused says he was not aware that anyone was with the reporter with whom he was acquainted. The accused testified he expected the reporter to respect his confidence though he did not tell him his statement concerning the insufficiency of the settlement offer was not for publication. The reporter did not use the information, but the Associated Press representative did, and thus the statement was widely disseminated. As a result of these publications, the trial judge granted a postponement of the trial which was scheduled for the second day after the conversation took place.

There was testimony by the Associated Press representative that he had previously met the accused at the accused's office for the purpose of interviewing one of the group of girls who had accompanied the deceased on the training activities during which she died. The accused also admitted that Associated Press

called him on the telephone that evening to verify his statement which the news representative had reported and that he told the agency he had made the statement. The accused testified that he did not tell the agency the statement was not for publication because he had already heard the report of the statement on the radio prior to the time the inquiry was made of him. He says that he knew he should not make such a statement for publication and that he had not intended to do so.

Because the accused did not tell the news agency, when inquiry was made, that the statement was not for publication and because he did not caution the reporter to whom he thought he was talking that the statement was not for publication, we agree with the Board of Governors that the statement was made under circumstances from which he could reasonably expect that it would be disseminated to the public.

The accused next contends that "to the extent it cuts off such comments (as were made here) when they cannot reasonably be said to affect the fairness of a contemplated trial, goes too far and encroaches on important constitutional rights of free speech and equal protection of the law." We agree with the accused's statement of the law, but hold that it has no application to the facts of this case because it is our judgment that the statements made here tended to prevent a fair trial. The accused cites cases of the United States Supreme Court relative to first amendment rights which hold that those who speak or write out of court about judicial proceedings cannot be punished without proof that their statements' publication created a clear and present danger to the fair and effective administration of justice. *See Craig v. Harney*, 331 US 367, 67 S Ct 1249, 91 L Ed 1546 (1947);

*Pennekamp v. Florida,* 328 US 331, 66 S Ct 1029, 90 L Ed 1295 (1946); *Bridges v. California,* 314 US 252, 62 S Ct 190, 86 L Ed 192, 159 ALR 1346 (1941).

These cases do not deal with disciplinary action against lawyers but rather with criminal or contempt proceedings against laymen. We hold that these opinions are not applicable to the present situation. When one is admitted to the bar he embraces certain ethical considerations and restrictions not required or expected of laymen which experience has indicated will be of benefit to the public if lawyers are required to obey them. One of these ethical rules, broadly stated, is that disputes should be tried by lawyers in court where limiting safeguards are available and not in the public news media.

It is this court's conclusion that the accused is guilty of misconduct as charged. This opinion will stand as a public reprimand to the accused, which we conclude is the proper disciplinary action merited.