Argued December 4, 1978, complaint dismissed March 8, 1979

In re Complaint as to the Conduct of
**HENRY R. RICHMOND, III,** *Accused.*
(OSB 1297, SC 25749)
591 P2d 728

Charles F. Hinkle, Portland, argued the cause for the accused. With him on the briefs were Henry H. Hewitt and Michael H. Bierman.

David P. Weiner, Portland, argued the cause for the Oregon State Bar. With him on the brief was Marvin S. Nepom.

PER CURIAM.

## PER CURIAM

The question to be decided is whether Henry R. Richmond III, a member of the Oregon State Bar, committed a professional impropriety when he wrote a letter informing the Governor of Oregon of an administrative proceeding initiated by Richmond on behalf of private parties and sent copies of the letter to a number of legislators and newspaper editors. The Oregon State Bar charged Richmond with a violation of DR 7-107(G), a disciplinary rule directing attorneys involved in a pending administrative proceeding to abstain from making public statements about the facts or merits at issue in the proceeding. The trial board and the disciplinary review board recommended that the charge be dismissed. We concur and dismiss the charge for the reasons that follow.

*Facts.* The facts giving rise to the present charge are not in dispute. Mr. Richmond has for a number of years been the executive director of an organization known as "1000 Friends of Oregon," often referred to as 1000 Friends, which is incorporated as an Oregon non-profit corporation under the legal name of Oregon Land Use Project, Inc. 1000 Friends was organized in 1974 to monitor the administration of state land use laws, which were enacted in 1969 and 1973, from the standpoint of the public interest as 1000 Friends sees it. The organization maintains an office and staff, publishes newsletters, conducts studies and educational programs, and participates as a party or as amicus curiae in administrative and judicial proceedings which in its view involve important issues of public policy.

In June, 1975, the Board of Commissioners of Marion County officially decided to rezone 23,000 acres of the county from farm use to potential subdivision into three-to-five acre lots. 1000 Friends regarded this rezoning decision as a major test case of local compliance with the state-wide goals and procedures of the state's Land Conservation and Development

Commission (LCDC). It therefore decided to file a petition for review of the county's decision with LCDC. Richmond was at the time the organization's only professional employee in addition to one secretary and office manager. In August, 1975, he filed the petition for review with LCDC as counsel for 1000 Friends and several of its individual members who owned property in the area concerned. At the same time, Richmond wrote and distributed the letter to the Governor which is presently in controversy.

Since this letter filled eleven single-spaced type-written pages, we shall not set it forth here. It may be described as a memorandum explaining 1000 Friends' position in the Marion County rezoning matter or perhaps as a summary of its arguments. The letter stated that 1000 Friends "wished to report" to the Governor that it had filed the petition to initiate LCDC review of "important questions" under LCDC's land use goals. It continued with an expository section explaining the nature and importance of the Agricultural Lands Goal, a description of certain land proposed for an industrial park in the rezoning, and a criticism of the county's failure to use certain procedures to take an exception from the LCDC goals. The letter went on to defend the advantages of the LCDC appeals procedure over court actions as a means of reviewing local land use plans against state-wide goals. It concluded by stating that 1000 Friends had filed its petition with LCDC not "in a spirit of criticism of Marion County" but in the belief that review of the county's compliance with LCDC's goals would contribute to the wider understanding of and compliance with these goals. A copy of the petition was transmitted with the letter. The letter did not address any request to the Governor or to the legislators and editors to whom copies were sent.

Although Richmond testified that he also hoped the publication of the letter might cause the county commissioners to reconsider their position, it appears

that they did not share his view of the constructive nature of 1000 Friends' petition for review, which the county moved to dismiss. In a letter which also found its way into the press, the chairman of the Marion County Board of Commissioners wrote to the LCDC chairman, L. B. Day, in defense of the county's decision and response to certain assertions in Richmond's letter to the Governor. The LCDC review ended in favor of 1000 Friends, and the decision withstood two appeals by the county. *Marion County v. LCDC,* 35 Or App 443, 582 P2d 17 (1978) (appeal dismissed as moot); *Marion County v. State ex rel 1000 Friends of Oregon,* 35 Or App 443, 582 P2d 17 (1978), *rev denied* Jan 23, 1979.

*The issues.* DR 7-107 is one of the rules of professional conduct drafted by the American Bar Association, approved by the Oregon State Bar, adopted by the court on December 30, 1970, and amended November 30, 1971, pursuant to ORS 9.490. We have not previously had occasion to construe it. Subsection (G) of the rule provides:

> During the pendency of an administrative proceeding, a lawyer or law firm associated therewith may quote from or refer to public records, but shall not make or participate in making a statement for public communication if it is made outside the official course of the proceeding and relates to:
>
> (1) Evidence regarding the occurrence or transaction involved.
>
> (2) The character, credibility, or criminal record of a party, witness, or prospective witness.
>
> (3) Physical evidence or the performance or results of any examinations or tests or the refusal or failure of a party to submit to such.
>
> (4) His opinion as to the merits of the claims, defenses, or positions of an interested person.
>
> (5) Any other matter reasonably likely to interfere with a fair hearing.

Since the facts are undisputed, the briefs and the opinions of the trial committee and the disciplinary

review board are addressed to two legal issues. One is the proper scope of DR 7-107(G); the other is its constitutionality if it should be applied to cover the kind of public correspondence involved in this case. The two issues are related insofar as we do not readily construe a law or rule to intend a constitutionally doubtful result, least of all a rule of our own making.

■ The constitutional doubts arise under the guarantees of freedom of expression and of petition in the Oregon Constitution and the federal first amendment. They may be summarized as follows: Oregon's Bill of Rights guarantees "the free expression of opinion" and "the right to speak, write, or print freely on any subject whatever," Oregon Constitution article I, section 8, as well as the specifically political right of the inhabitants of the state "to consult for their common good," to instruct their representatives, and to apply to the legislature for redress of grievances, article I, section 26. These provisions are similar to but in some respects more explicit than those of the first amendment. *Deras v. Myers,* 272 Or 47, 535 P2d 541 (1975). Even decisions under the first amendment have repeatedly struck down restrictions on discussion of pending cases or investigations, although dicta leave open whether the narrowest restraint under urgent conditions might escape that amendment. *See, e.g., Landmark Communications, Inc. v. Virginia,* 435 US 829, 56 L Ed 2d 1 (1978) and cases cited at page 14. At the same time, it is clear that lawyers do not forfeit the right to speak or write freely or to petition the government just because they are "officers of the courts." *See, e.g., In re Primus,* 436 US 447, 56 L Ed 2d 417 (1978), *Bates v. State Bar of Arizona,* 433 US 350 (1977). Litigation has long been recognized as one form of associational activity or "petition." *See United Transportation Union v. State Bar of Michigan,* 401 US 576 (1971); *NAACP v. Button,* 371 US 415 (1963). Thus the United States Supreme Court has, for instance, relieved a lawyer participating in this form of activity from restrictions that might be imposed

upon the financially motivated solicitation of legal business. *Compare In re Primus, supra,* with *Ohralik v. Ohio State Bar Assn.,* 436 US 447, 56 L Ed 2d 444 (1978). If a lawyer may invoke these principles with respect to litigation, the more so do they apply with respect to administrative proceedings in which a government agency is determining important issues of public policy under broad delegation from the legislative assembly.

These constitutional considerations led the trial committee and at least a minority of the disciplinary board to dismiss the charge, and we do not say that they were wrong. However, we need not reach the issue, because we agree with the accused and two members of the disciplinary review board that the letter did not violate DR 7-107(G).

■ DR 7-107, of which (G) is a part, had its origin in the recommendations made by the American Bar Association's Advisory Committee on Fair Trial and Free Press after *Sheppard v. Maxwell,* 384 US 333 (1966). The recommendations were concerned with statements and publicity before and during a criminal trial that could prejudice the defendant's right to trial by an impartial jury on the evidence presented in court and, insofar as they were addressed to the professional obligations of counsel, they proscribe comments of a kind designed or highly likely to have such a prejudicial effect on lay factfinders.[1] The addition of subsections (F) and (G) extended the coverage of DR 7-107 to civil and administrative proceedings, but the reach of those subsections is properly defined by a concern with the same kind of prejudice to impartial factfinding that is the concern of DR 7-107 as a whole. Thus, although the rule could be read as forbidding all public statements involving the first four listed items *per se,*

---

[1] The United States Supreme Court has suggested that professional judges do not require the insulation from extra-judicial criticism or public debate of a case that jurors do. *See Craig v. Harney,* 331 US 367 (1947); *Pennekamp v. Florida,* 328 US 331 (1946).

we agree with the disciplinary review board that the reference in DR 7-107(G)(5) to any *other* matter prejudicing a fair hearing shows that the entire rule applies only to such prejudicial statements.

Since DR 7-107(G) uses the broad term "administrative proceeding," its proper application depends particularly on identifying the kind of determinations that the rule is designed to protect. The term "administrative proceeding" by itself could literally include proceedings of any kind preceding any government action other than the enactment of legislation or an adjudication in a court. That would include the vast number of state and local proceedings devoted to rulemaking, planning, budgeting, and similar actions which represent a choice between competing policies rather than a determination of disputed facts upon a record of evidence taken in an adjudicatory hearing. In its context, however, DR 7-107(G) refers only to the latter kind of hearing, and within that, to the issues that depend on the contested factual determination rather than to policy choices. A broader reading would once again raise the constitutional difficulties discussed previously. *See, e.g., California Motor Transport Co. v. Trucking Unlimited,* 404 US 508 (1972), distinguishing *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 US 127 (1961) by the difference between adjudicatory and legislative or political issues. It is, of course, characteristic of much administrative action that the legislature has delegated authority to the agency to inform itself on the facts and to determine its view of the proper public policy in the same proceeding. *See, e.g., Marbet v. PGE,* 277 Or 447, 561 P2d 154 (1977); *Green v. Hayward,* 275 Or 693, 552 P2d 815 (1976). Since the "fair hearing"in such a proceeding will often be adjudicatory in form as to disputed facts but largely argumentative as to the issue of public policy, application of DR 7-107(G) must follow this line between undue influence on the factual adjudication (as shown by its references to evidence and the credibility of witnesses) and freedom

[476]

to pursue the support of the public and its representatives on the policy issues.

■ *Conclusion.* The proceeding before the Land Conservation and Development Commission to review Marion County's rezoning of 23,000 acres fits the pattern described above. The county's own decision was one of local land use policy. LCDC's land use goals are determinations of the state's public policy adopted in the form of rules under a broad legislative delegation. ORS 197.040; OAR 660-15-000 through 660-15-010. The goals themselves contain broad terms requiring further interpretation. In deciding whether a particular land use plan complies with the goals, the chief issue may be the proper accommodation of conflicting goals and the weight to be given to each. Thus a review proceeding such as the one initiated by 1000 Friends may require LCDC to make both policy decisions arising under LCDC's land use goals and findings of fact, which must be based on evidence in the record, because review hearings are required to be held by "contested case" procedures under the Administrative Procedure Act. ORS 197.305(2). It would not be improper for other interested parties or public officials to seek to participate in the proceedings by intervention or otherwise to argue the policy issues, even if they did not offer new evidence on disputed issues of fact. ORS 197.305(3), ORS 183.310(5)(c).

LCDC and its goals were a new and politically still controversial program, and the legislature had established a special committee of both houses to monitor its progress, whose members received copies of Richmond's letter explaining 1000 Friends' appeal. Richmond's letter did not in fact request that the Governor or anyone else enter the LCDC proceeding. As stated above, the letter made no requests at all. Insofar as it contained statements about the facts of the rezoning at issue, these appear in the context of describing the controversy and the reasons for 1000 Friends' concern. They were not addressed to LCDC and Richmond did

[477]

not send copies of the letter to LCDC. Under the circumstances, we conclude that the letter did not constitute the kind of interference by extra-judicial statements with the adjudication of factual issues against which DR 7-107, including subsection (G), is directed.

The Bar's complaint is dismissed.