Argued and submitted October 7, complaint dismissed November 4, 1980

In re: Complaint as to the Conduct of

# ROBERT H. BURROWS,
*Accused.*

(OSB No. 78-60, SC 26967)

618 P2d 1283

Robert A. Lucas, of Lucas, Petersen & Huffman, Rainier, argued the cause and filed a brief for the accused.

Blair M. Henderson, Klamath Falls, argued the cause for the Oregon State Bar. With him on the brief was Robert D. Boivin, Klamath Falls.

PER CURIAM

**PER CURIAM.**

The Oregon State Bar brought disciplinary proceedings against Robert M. Burrows, the district attorney for Josephine County, for alleged unethical conduct. The Trial Board recommended a private letter of censure[1] by the Oregon State Bar, and the Disciplinary Review Board recommended a public reprimand. We dismiss the proceeding.

We find these facts: The mother of one Robert Shoemaker received a letter from her son, who was alleged to have committed several crimes and was then in custody while awaiting trial on a charge of felony murder. Shoemaker had written the letter expressing his sorrow for unspecified acts he had committed and to ask his mother's forgiveness. The letter made no specific reference to the homicide. In February, 1978, Mrs. Shoemaker gave the letter to the district attorney, specifically authorizing him to use it in any manner to help young people. At the time Burrows received the letter, Shoemaker had already confessed to the homicide. Burrows did not believe that the letter was germane to any issue in the pending criminal case, nor did he believe that the letter had any evidentiary value.

In May of 1978, while the Shoemaker case was pending, Burrows received an invitation from a teacher at Grants Pass High School to talk to four high school classes about the responsibilities and functions of the district attorney's office. He read the Shoemaker letter to the students. According to Burrows, the letter was read to show the impact of a momentary decision on one's life. Burrows told the students, "I hope none of you have to write a letter like this one to your parents." Burrows did not read the letter with intent to prejudice the rights of defendant Shoemaker nor did he intend to use the letter as evidence at trial. There was no prejudice to Shoemaker's rights.

While the complaint did not charge violation of a specific Disciplinary Rule,[2] both the Disciplinary Review

---

[1] There is no provision in the Rules of Procedure Relative to Admission, Discipline, Resignation and Reinstatement for a "private letter of censure."

[2] Since the filing of the complaint in this case, Section 15 of the Rules of Procedure has been amended so as to require the specification of not only the "acts or omissions of the accused," but also "the statutes, the canons, or the Disciplinary Rules violated," so that the accused is aware of the "nature of the charges against him." *In re Ainsworth,* 289 Or 479, 488, 614 P2d 1127 (1980).

Board and the Trial Board found that Burrows' conduct was unethical and in violation of Disciplinary Rules 7-107(B)(3) and 1-102(A)(5).

DR 7-107(B)(3) provides:

"A lawyer or firm associated with the prosecution or defense of a criminal matter shall not, from the time of the filing of a complaint, information or indictment, the issuance of an arrest warrant or arrest, until the commencement of the trial or disposition without trial, make or participate in making an extrajudicial statement for public communication that relates to:

" * * * * *.

"(3) The existence or contents of any confession, admission or statement given by the accused or his refusal or failure to make a statement."

DR 1-102(A)(5) provides:

"A lawyer shall not * * *

"(5) Engage in conduct that is prejudicial to the administration of justice."

DR 7-107 is a comprehensive rule of professional conduct intended to insure that the trial of civil, criminal and administrative proceedings will be conducted in an atmosphere which is free from the taint of unfair pretrial publicity. The rule proscribes lawyers' comments of a kind designed or likely to have a prejudicial effect on prospective jurors. *In Re Richmond,* 285 Or 469, 475, 591 P2d 728 (1979). DR 7-107 was adopted following the decision of the Supreme Court of the United States involving the highly publicized murder trial of Sam Sheppard, *Sheppard v. Maxwell,* 384 US 333, 16 L Ed 2d 600, 86 S Ct 1507 (1966). DR 7-107 was previously considered by this court in the context of an administrative hearing in *In Re Richmond, supra* (DR 7-107(G)), and in the context of a civil trial in *In Re Porter,* 268 Or 417, 521 P2d 345 (1974) (DR 7-107(F)). This is the first case in which we have applied DR 7-107(B), which regulates pre-trial conduct of lawyers involved in criminal proceedings.

The position of the Bar is:

"When the foregoing sentences [in the Shoemaker letter] are read as written by a defendant awaiting trial, they may not constitute a confession in a formal sense, but they certainly amount to a statement by the defendant about

his past conduct. The only inference that can be drawn is the one the accused himself drew from the letter, that the son had committed a crime and would suffer severe consequences and that he hoped others would learn from this communication. The intention of the accused was to set an example for the students. It would not have served his purpose at all to read a letter that did not contain statements of guilt or remorse as this one did. It is the position of the Oregon State Bar that such statements [constitute] 'admissions or statements' as set forth in the Disciplinary Rule in question."

At the time of Burrows' appearance at the high school, a number of felony charges involving burglaries, thefts, attempted murder, and murder were pending against Shoemaker, and there existed other potential criminal charges as well. Although the Shoemaker letter could arguably come within the definition of an admission or statement, the relationship, if any, between the statements in the letter and any one of the pending or potential criminal charges is tenuous.[3]

An inadvertent violation of a rule of professional conduct might cause as much harm as a wilful violation.[4] In that sense, the intent of the person charged is not necessarily an important or determinative factor. What is important is the effect which my ensue. We are persuaded that Burrows' reading of the letter was not likely to have any effect on the pending criminal case. The comments were not "of a kind designed or * * * likely to have * * * a prejudicial effect on lay fact finders." *In Re Richmond, supra,* 285 Or at 475.

Furthermore, DR 7-107(B)(3) refers to statements made by attorneys "for public communication." Although the high school students are unquestionably members of the public, we believe that Burrows' comments were not of a kind designed to reach the news media or those members of the citizenry who might be expected to be jurors, or be used beyond the purpose expressed by him.

Under the circumstances of this case, we conclude that the reading of the letter did not constitute the kind of

---

[3] *Compare State v. Suttles,* 287 Or 15, 32, 597 P2d 786, 795 (1979).

[4] *Compare In Re Porter,* 268 Or 417, 421, 521 P2d 345 (1974).

interference by extra-judicial statements with the fair adjudication of factual issues against which DR 7-107, including subsection (B), is directed. For the same reasons, we find no violation of DR 1-102(A)(5).

The Bar's complaint is dismissed.