Billy Dewayne PRICE, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–86–319.

Court of Criminal Appeals of Oklahoma.

Oct. 30, 1989.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

Billy Dewayne Price, appellant, was tried by jury for the crimes of First Degree Murder, in violation of 21 O.S.Supp.1982, § 701.7(C), and Lewd Molestation, in violation of 21 O.S.Supp.1983, § 1123, in the District Court of Rogers County, Case No. CRF–85–95. The jury found appellant guilty of both crimes and set punishment at twenty (20) years imprisonment on Count II. The trial court sentenced appellant in accordance with said verdict. Because the jury was unable to reach a verdict regarding punishment on Count I, the trial judge discharged the jury and imposed a sentence of life imprisonment. From these judgments and sentences, appellant appeals to this Court.

On May 15, 1985, at approximately 9:15 p.m., Francis Gelvin and Brenda Wilkerson left Ms. Gelvin's Oologah, Oklahoma trailer house. Ms. Gelvin's two daughters, four-year-old Bonnie and seventeen-month-old Amber, were left in the care of appellant, then Ms. Gelvin's common-law husband. This case arises from the events which transpired during the ensuing hour.

At 10:30 p.m., Mrs. Ruby Garrison, a neighbor, answered her door to find appellant frantically seeking assistance. After explaining that his child had been injured and requesting Mrs. Garrison to call for help, appellant returned home. Mrs. Garrison then telephoned the police and walked toward the trailer. She and Oologah Police Officer Richard Reynolds arrived at the scene at approximately the same time. Thereupon, they witnessed appellant, who was running toward them with Amber in his arms, stumble and fall to his knees. Both Mrs. Garrison and Officer Reynolds testified that the child was gently placed on the ground at that time.

Noting that Amber was very limp and having difficulty breathing, Officer Reynolds immediately began using CPR to revive her. Minutes later, Dr. James Stauffer and a rescue unit arrived at the scene. Dr. Stauffer diagnosed Amber as having a head injury and requested that Life Flight, Tulsa's emergency helicopter service, be called. Life Flight arrived approximately fifteen (15) minutes later and the child was thereafter transported to St. Francis Hospital in Tulsa. Despite extensive medical procedures, Amber's condition deteriorated. She was pronounced dead on May 18, 1985. The cause of death was listed as subdural hematoma (blood in the brain) and cerebral edema (swelling of the brain), secondary to blunt injury to the brain.

Appellant consistently maintained that Amber's injuries were the result of two separate accidents. He first claimed to have been playing with the older child when he lost his balance and fell on Amber, alleging that his lower back landed on the child's chest and abdomen. Appellant further asserted that as he stumbled in the driveway while carrying Amber, his pelvis again struck the girl's abdomen. However, medical testimony sharply contrasted appellant's version of the facts.

Dr. Diane Gobal, the pediatric resident on duty in the emergency room, was the first doctor to treat Amber upon her arrival at St. Francis. Dr. Gobal testified that there was no evidence of trauma to either Amber's chest or abdomen. Her examination of the child did, however, reveal the following: One abrasion on Amber's nose, two abrasions on her chin, marked bruising about the genital area, one large red bruise on the pelvis bone, several old bruises on the thighs, bruising about the buttocks, a large fresh contusion on the right external vaginal opening, an abrasion on the inside of the vaginal wall, bloody discharge in the

vaginal opening, and a slightly dilated hymen. Dr. Gobal concluded that all of the injuries were inconsistent with appellant's version of the facts and that the vaginal area injuries were consistent with the touching of an adult penis or another instrument.

Dr. Robert Lee Hemphill, Deputy Chief Medical Examiner for the State of Oklahoma, generally concurred in Dr. Gobal's findings. He determined that the facial and genital area bruising had been inflicted within three to five days of Amber's death. Both Dr. Hemphill and Dr. Gene Miller, the attending pediatric neurologist, concluded that the child's fatal injuries were caused by repetitive violent shaking.

As his first assignment of error, appellant asserts that the trial court erred in refusing to grant his motion for a change of venue. Specifically, he contends that extensive pretrial publicity deprived him of his right to a fair and impartial jury. In support of his motion before the trial court, appellant filed the affidavits of forty-six (46) Rogers County residents wherein each affiant expressed their belief that appellant could not receive a fair trial in that county because of adverse publicity. On the basis of the foregoing, and upon the fact that most of the potential jurors had heard of or read about the case, appellant urges this Court to reverse his conviction.

■■■ Initially, we note that a motion for a change of venue is addressed to the sound discretion of the trial court, and its decision will not be disturbed absent abuse. *Godbey v. State*, 731 P.2d 986, 987 (Okl.Cr. 1987); *Frye v. State*, 606 P.2d 599, 602 (Okl.Cr.1980). When considering such a motion, the presumption of law is that a defendant can get a fair and impartial trial in the county in which the charged offense was committed. *Brown v. State*, 743 P.2d 133, 136 (Okl.Cr.1987); *Eberhart v. State*, 727 P.2d 1374, 1377 (Okl.Cr.1986). Such presumption is rebuttable, but the burden of persuasion is upon the defendant. *Brecheen v. State*, 732 P.2d 889, 893 (Okl.Cr. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1085, 99 L.Ed.2d 244; *Robison v. State*, 677 P.2d 1080, 1083 (Okl.Cr.1984), *cert. de-*

nied, 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831. A mere showing that pretrial publicity was adverse to the defendant is not enough. *Brown*, supra at 136; *Brecheen*, supra at 893. Nor is the existence of affidavits dispositive of this issue. *Brown*, supra at 135; *Walker v. State*, 723 P.2d 273, 278 (Okl.Cr.1986), *cert. denied,* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600. The defendant must show by clear and convincing evidence not only that the jurors were exposed to the publicity, but that he was thereby prejudiced. *Brown*, supra at 136; *Robison*, supra at 1083.

■■■ In the present case, extensive voir dire examination revealed that seven (7) of the twelve (12) impaneled jurors had either read about or heard of appellant's case. However, each of those jurors stated that they had not formed an opinion as to appellant's innocence or guilt. All twelve (12) jurors avowed they could fairly and impartially judge the case solely on the evidence presented. Those venirepersons who had formed opinions concerning appellant's guilt or doubted their ability to serve impartially were excused for cause. We find such process adequately safeguarded the jury process, *Brecheen*, supra at 893, and that appellant failed to demonstrate prejudice. Accordingly, we hold that the trial court did not abuse its discretion in refusing to grant appellant's motion for a change of venue.

■■■ In his second assignment of error, appellant maintains that Count II of the Information was insufficient and that the Lewd Molestation instructions improperly authorized his conviction. Appellant was originally charged with First Degree Rape under Count II, but an amended Information charged him with Attempted First Degree Rape. However, the preliminary hearing magistrate bound appellant over for the crime of Lewd Molestation and the Second Amended Information reflected such charge. That Information included all of the elements of Lewd Molestation plus an allegation that appellant penetrated the victim's vagina with his penis or another object. Evidence of vaginal penetration was introduced both at the preliminary

hearing and at trial, as was other evidence indicative of sexual abuse. The jury instructions pertaining to Count II were virtually identical to the language set forth in 21 O.S.Supp.1983, § 1123.

As stated above, appellant was charged by Information for the crime of Lewd Molestation. Count II contained the elements of the crime charged, correctly apprised appellant of what he must have been prepared to meet and did not expose him to the possibility of being put in jeopardy a second time for the same offense. *See Allen v. State*, 734 P.2d 1304 (Okl.Cr.1987). Moreover, the State presented evidence of Lewd Molestation and the jury found appellant guilty of that crime. Therefore, we must reject appellant's argument that the description contained in the Information failed to adequately apprise him of what he must have been prepared to meet.

■ With respect to the second part of this assignment, appellant contends that the Lewd Molestation instructions were insufficient because they did not require proof of penetration. Initially, we note that defense counsel did not object to the Lewd Molestation instructions given, nor did they proffer any written requested instructions covering said subject matter. Therefore, any alleged error has been waived. *Peninger v. State*, 721 P.2d 1338, 1341 (Okl.Cr.1986); *Lipe v. State*, 716 P.2d 700, 703 (Okl.Cr.1986).

■ Had this issue been properly preserved for review, we would find no error. A review of the record clearly reveals that the State included the allegation of penetration in an attempt to more accurately describe how the offense was committed. The crime of Lewd Molestation does not require penetration for its commission, *see*, 21 O.S.Supp.1983, § 1123, and therefore no such instruction was warranted. We find that the instructions given, considered as a whole, fairly and accurately stated the applicable law. *Redden v. State*, 739 P.2d 536, 538 (Okl.Cr.1987); *Goodwin v. State*, 730 P.2d 1202, 1205 (Okl.Cr.1986). This assignment of error is without merit.

■ Appellant next contends that Count I of the Information was insufficient because it failed to allege that the underlying offense was committed maliciously and he asserts that the Information and instructions wrongfully omitted an allegation that the murder was committed in the course of felony child abuse. We first note that the *mens rea* element of 21 O.S.Supp. 1982, § 701.7(C), is supplied by 21 O.S. Supp.1982, § 843. *See Drew v. State*, 771 P.2d 224, 228 (Okl.Cr.1989). Section 843 provides that those acts which are committed in either a willful *or* malicious manner fall within the purview of the statute. Because the Information herein alleged that the crime was committed "wilfully," we find no error.

■ Second, Section 701.7(C) does not differentiate between felony and misdemeanor child abuse under Section 843. Section 701.7(C) merely states that "[a] person commits murder in the first degree when the death of a child results from [child abuse] pursuant to Section 843...." Therefore, no allegation that the murder was committed during the course of felony child abuse was required in either the Information or instructions. This assignment is without merit.

■ As his fourth assignment of error, appellant maintains that the trial court erred in refusing to sequester the jury during his trial. This Court has consistently held that a motion to invoke the rule of sequestration is addressed to the sound discretion of the trial court and is not an absolute right of the defendant. *Harvell v. State*, 742 P.2d 1138, 1141 (Okl.Cr.1987); *Matricia v. State*, 726 P.2d 900, 903 (Okl. Cr.1986). *See also* 22 O.S.1981, § 853. An abuse of discretion will be found only where appellant shows, by clear and convincing evidence, that (1) the jurors were specifically exposed to media reports which (2) were prejudicial to the appellant. *Harvell*, supra at 1141–42; *Collums v. State*, 695 P.2d 872, 875 (Okl.Cr.1985).

■ In his brief, appellant asserts that he was undoubtedly prejudiced by hostile crowds and inflammatory media publicity and that the jurors were exposed to a risk

of possible annoyance. However, "appellant offers no evidence, must less clear and convincing evidence, that the jurors were exposed to media reports during trial, nor does the record reflect that the appellant was prejudiced by the failure to sequester the jury." *Harvell*, supra at 1142. The record herein reveals that the jury was properly admonished at the close of each day's proceedings. Absent specific evidence to the contrary, this Court will presume that the trial court's instructions were followed. *Tomlinson v. State*, 554 P.2d 798, 803 (Okl.Cr.1976). Accordingly, we find that the trial court did not abuse its discretion.

In his fifth assignment of error, appellant complains that he was denied a fair and impartial trial by the admission of two separate incidents of other crimes evidence. Prior to trial, the State gave notice of its intent to introduce evidence that appellant had previously assaulted the victim. The trial court sustained defense counsel's Motion in Limine to exclude such evidence. However, during cross-examination of Francis Gelvin, defense counsel inquired whether Ms. Gelvin had ever suspected appellant of abusing her children in the past. Ms. Gelvin stated that she had not. On redirect, the prosecution ascertained that Ms. Gelvin had, in fact, suspected prior child abuse of Amber. Thereupon, she was permitted to testify, over objection, as to one such particular incident. The trial court sustained an objection to the State's attempt to elicit testimony of a second instance of abuse. In so ruling, the trial judge rejected the prosecutor's argument that further questioning along this line was permissible for purposes of impeaching Ms. Gelvin's statement and held that such impeachment had already been accomplished.

It is well settled that the State may impeach its own witnesses, *Patterson v. State*, 735 P.2d 338, 341 (Okl.Cr.1987), and that the reception of evidence rests within the sound discretion of the trial court. *Scott v. State*, 751 P.2d 758, 760 (Okl.Cr. 1988). Moreover, this Court has repeatedly held that an appellant will not be permitted to profit from an alleged error which he or

his counsel invited by opening the subject. *Staggs v. State*, 719 P.2d 1297, 1299 (Okl. Cr.1986); *Penn v. State*, 684 P.2d 562, 564 (Okl.Cr.1984). Even if we held that the trial court erred in admitting the testimony at issue, which we do not, this Court finds that such alleged error was invited by defense counsel's questioning of Ms. Gelvin regarding past indications of abuse.

Appellant alleges that a second error occurred when the trial court allowed the rebuttal testimony of appellant's ex-wife, Sheila Harris, to wit: that she was assaulted by appellant in August, 1979. Ms. Harris was preceded at trial by eight (8) defense witnesses, each of whom testified that appellant had never shown any predisposition toward violence and that appellant had a good reputation in the community.

Admission of rebuttal evidence is a matter within the sound discretion of the trial court and will not be grounds for reversal absent abuse of discretion. *Salyers v. State*, 755 P.2d 97, 102 (Okl.Cr. 1988). Rebuttal evidence may be admitted to repel, counteract, disprove, destroy, or explain facts offered by an adverse party or to clarify a disputed point. *Id.; Devooght v. State*, 722 P.2d 705, 713 (Okl.Cr. 1986). Because Ms. Harris' testimony was relevant to disprove or destroy defense counsel's contention that appellant was non-violent, we hold that the trial court did not err in admitting the same. This assignment of error is without merit.

As his sixth assignment, appellant asserts that the trial court committed fundamental error by failing to instruct the jury on the offense of Misdemeanor Manslaughter. Appellant bases this argument on the fact that the crime of child abuse under 21 O.S.Supp.1982, § 843, may be classified as either a felony or a misdemeanor. Accordingly, he contends, the death of a child which occurs without premeditation and as a result of misdemeanor child abuse warrants an instruction on Misdemeanor Manslaughter. We disagree.

We first note, as does appellant, that his trial counsel did not object to the murder instructions given and failed to submit any written requested manslaughter instruc-

tions. Therefore, any alleged error, except that of a fundamental nature, has been waived. *Mornes v. State*, 755 P.2d 91, 93 (Okl.Cr.1988); *Rowell v. State*, 699 P.2d 651, 653 (Okl.Cr.1985). Appellant was charged with the crime of First Degree Murder in violation of 21 O.S.Supp.1982, § 701.7(C). As previously set forth, Section 701.7(C) does not differentiate between felony and misdemeanor child abuse under Section 843. As this Court stated in *Schultz v. State*, 749 P.2d 559, 561–2 (Okl. Cr.1988), "With the enactment of Section 701.7(c) the legislature has clearly stated its intention that the use of unreasonable force upon a child, pursuant to 21 O.S.1981, § 843 is to be punished as Murder in the First Degree." Thus, no Misdemeanor Manslaughter instructions were warranted.

▆▆▆ As his seventh assignment of error, appellant contends that there was insufficient evidence to support his conviction for First Degree Murder. Specifically, appellant argues that the State failed to prove that he caused the death of Amber Gelvin. The test to be utilized by a reviewing court when determining if the State presented sufficient evidence to support a conviction where both direct and circumstantial evidence has been introduced is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Riley v. State*, 760 P.2d 198, 199 (Okl.Cr.1988); *Spuehler v. State*, 709 P.2d 202, 203–4 (Okl.Cr.1985).

The evidence in this case revealed that Amber was under the sole supervision of appellant when her injuries were inflicted. Neither Francis Gelvin nor Brenda Wilkerson noticed anything unusual about Amber's physical condition prior to leaving her in appellant's care. When the child was next seen approximately one hour later, she was unconscious and suffering from a severe head injury. There was also extensive evidence which indicated that the girl had been sexually abused. Despite appellant's claim that he accidentally fell on Amber, expert medical testimony revealed that the child's fatal injuries were caused by repetitive violent shaking. With respect to the second alleged accident, two witnesses stated that appellant did not fall on Amber, as he maintained, but that she was gently placed on the ground. There was no evidence of trauma to either the child's chest or abdomen, further discrediting appellant's testimony. Finally, Amber's other injuries were also deemed by to inconsistent with appellant's version of the facts. Having viewed this evidence in the light most favorable to the State, we find that any rational trier of fact could have found beyond a reasonable doubt that appellant murdered Amber Gelvin. This assignment of error is without merit.

In his final assignment of error, appellant asserts that Francis Gelvin was an accomplice and, as such, the trial court erred in refusing to instruct the jury that her testimony required corroboration. Appellant's sole rationale in support of this argument is that Ms. Gelvin admitted having inflicted some of the bruises found on her daughter's body. Testimony disclosed that several small bruises located on Amber's lower abdomen were the result of Ms. Gelvin having tickled her daughter in that area.

▆▆▆ The test used to determine whether a witness is an accomplice is whether she could be indicted for the offense for which the acccused is being tried. *Watkins v. State*, 744 P.2d 967, 969 (Okl. Cr.1987); *Mills v. State*, 737 P.2d 573, 574 (Okl.Cr.1987). The accused herein was tried and convicted of First Degree Murder and Lewd Molestation. We are in no way persuaded to declare that Ms. Gelvin's actions amounted to either of these crimes, and accordingly find that she could not have been indicted for the same.

Finding no error warranting modification or reversal, the judgments and sentences are AFFIRMED.

PARKS, P.J., LANE, V.P.J., and LUMPKIN, J., concur.