Kenneth Don **TATE, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–87–982.

Court of Criminal Appeals of Oklahoma.

May 10, 1995.

Irven R. Box and Diane Clowdus, Oklahoma City, for appellant at trial.

Patty Palmer and Jamie D. Pybas, Asst. Appellate Indigent Defenders, Norman, for appellant on appeal.

Patrick Morgan and Sandra Stensaas, Asst. Dist. Attys., Oklahoma City, for the State at trial.

Susan Brimer Loving, Atty. Gen. of Oklahoma and Sandra D. Howard, Asst. Atty. Gen., Chief, Crim. Div., Oklahoma City, for appellee.

## OPINION

JOHNSON, Presiding Judge:

Appellant, Kenneth Don Tate, was tried by a jury and convicted of Murder in the First Degree for the shooting death of Rosalee Tate (Count I), Murder in the First Degree for the shooting death of Jeffrey White (Count II), and Pointing a Firearm (Count III) in the District Court of Oklahoma County, Case No. CRF–87–1820. The jury found the following two aggravating circumstances existed in the murder of Rosalee Tate: (1) that the murder was especially heinous, atrocious or cruel; and (2) that appellant knowingly created a great risk of death to more than one person. As to the murder of Jeffrey White, the jury only found the aggravating circumstance of great risk of death to more than one person. The jury ultimately recommended appellant be sentenced to death for the murder of Rosalee Tate, life imprisonment for the murder of Jeffrey White, and ten (10) years for the offense of Pointing a Firearm. The trial court sentenced appellant accordingly. From this judgment and sentence, appellant has now perfected this appeal.

On the afternoon of April 5, 1987, appellant shot to death his former wife, Rosalee Tate, and her friend, Jeffrey White. The incident occurred in the parking lot of Beachler's I.G.A. in Midwest City, Oklahoma. Appellant turned himself in at the Midwest City police station shortly after the shootings. Other relevant facts will be discussed in the assignment of error to which they relate.

## I. ISSUES RELATING TO COMPETENCY

On May 15, 1987, Mr. Tim Wilson, appellant's attorney at that time, filed an Application for Determination of Competency. An order granting the application was entered on May 29, 1987. Pursuant to this order, appellant was examined by Dr. Larry M. Prater, M.D. on June 5, 1987. On June 10, 1987, Dr. Prater issued a report which concluded that appellant was competent to stand trial. Thereafter, on June 16, 1987, defense counsel filed an Application to Resume Criminal Proceedings for the reason that appellant had been determined to be competent. Judge Joe Cannon granted appellant's request that same day. In his first assignment of error, appellant contended that his convictions must be reversed because the trial court failed to conduct the mandatory post-examination competency hearing prior to the resumption of criminal proceedings.

In an unpublished order dated June 22, 1990, this Court remanded this cause to the district court for the purposes of conducting a proper hearing. We specifically ordered:

> The trial court make findings concerning the feasibility of presently determining appellant's competency to stand trial in light of *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), as well as findings of his competency to stand trial when he did.

A hearing to determine the feasibility of conducting a retrospective competency hearing was held on August 12, 1992, before the Honorable Eugene H. Mathews. At the conclusion of this hearing, Judge Mathews took the matter under advisement. On August 21, 1992, Judge Mathews entered his written findings of fact and conclusions of law in which he concluded that it was feasible to conduct a post-evaluation competency hearing. Thereafter, on June 9, 1993, a jury found that appellant had been competent to stand trial in November of 1987. The findings in this regard were forwarded to this Court, and we permitted additional time for both parties to file supplemental briefs on this matter.

## A.

■ Appellant first contends that retrospective competency proceedings violate Title 22 O.S.1991, §§ 1175.4 through 1175.8 and the Due Process Clause of the United States and Oklahoma Constitutions. However, the failure to conduct a competency hearing concurrently with the trial is not per se violative of due process. *Clayton v. State,* 840 P.2d 18, 24–25 (Okl.Cr.1992); *Boltz v. State,* 806 P.2d 1117, 1121 (Okl.Cr.1991); *Anderson v. State,* 765 P.2d 1232, 1233 (Okl.Cr.1988); *Rowell v. State,* 699 P.2d 651 (Okl.Cr.1985). Rather, "if a defendant's competency at the time of trial can be meaningfully determined at a subsequent time on the basis of credible and competent evidence, then error committed by a district court in failing to hold a hearing at the proper time can be cured." *Boltz,* 806 P.2d at 1121. Consequently, the pivotal issue is whether a retrospective competency determination was feasible.

■ Upon thorough review of the record in the instant case, we find that trial court properly found that a retrospective competency determination was feasible. The State demonstrated that the following evidence/witnesses would be available if a retrospective competency hearing was conducted: (1) Dr. Larry Prater, M.D., the psychiatrist who conducted the psychological evaluation of appellant; (2) Dr. Prater's written report; and (3) appellant's three attorneys who represented him prior to and at trial. Although this list may not be as lengthy as the list of available evidence/witnesses discussed in *Clayton,* 840 P.2d at 25, the bottom line is that competent evidence existed from which a jury could make a meaningful determination of appellant's competency at the time of his 1987 trial. Therefore, we find no error.

Appellant further asserts that a meaningful retrospective competency hearing was rendered unfeasible by the lengthy lapse of time since his 1987 trial. However, "delays occasioned by a remand and continuances do not necessarily preclude a meaningful retrospective determination." *Clayton,* 840 P.2d at 25. In light of the available evidence, the time lapse involved in this case did not preclude a meaningful determination of competency.

## B.

■ Appellant contends next that Title 22 O.S.1991, § 1175.4 is unconstitutional because it improperly presumes every defendant is permanently competent and requires the allegedly incompetent person to prove his incompetence. The United States Supreme Court recently addressed this issue in *Medina v. California,* 505 U.S. ——, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992), finding that the due process clause permits a state to apply a presumption that a criminal defendant is competent to stand trial, and to require that the defendant bear the burden of proving otherwise.

*Medina* addressed a California statute which placed the initial burden of proving incompetency on the party claiming incompetence. As the defendant in *Medina* raised the issue of competency, he bore the burden of proving his incompetency. In finding no constitutional violation, the Court stated:

> Based on our review of the historical treatment of the burden of proof in competency proceedings, the operation of the challenged rule, and our precedents, we cannot say that the allocation of the burden of proof to a criminal defendant 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' (citing *Patterson v. New York,* 432 U.S. 197, 53 L.Ed.2d 281, 97 S.Ct. 2319 (1977)).

*Id.,* 505 U.S. at ——, 112 S.Ct. at 2577, 120 L.Ed.2d at 363.

Nonetheless, appellant contends *Medina* is distinguishable because Oklahoma imposes "procedural" barriers far more rigorous than those reviewed in *Medina.* Appellant first contends *Medina* is distinguishable as a defendant in Oklahoma bears the burden of proving his incompetence regardless of whether he, the court, or even the district attorney raises the issue of competency. This distinction has no bearing on the *Medina* decision. The Court in *Medina* found that "there is no settled tradition on the proper allocation of the burden of proof in a proceeding to determine competence." *Id.,* 505 U.S. at ——, 112 S.Ct. at 2578, 120

L.Ed.2d at 364. In reviewing decisions from all fifty States, the Court found that a number of state courts have placed the burden of proof on the defendant, while other state courts have placed the burden on the prosecution. *Id.* It is precisely because of this diverse placement of the burden of proof by states that the Court in *Medina* could not discern any historical basis for concluding that the allocation of the burden of proving competence to a defendant violates due process. *Id.*, 505 U.S. at ——, 112 S.Ct. at 2578–79, 120 L.Ed.2d at 365.

Appellant further contends Oklahoma's competency determination statutes are more rigorous because Oklahoma requires the defendant to prove incompetence even when the defendant has previously been adjudicated incompetent to stand trial. We assume appellant is referring to the provisions contained in 22 O.S.1991, § 1175.8. Section 1175.8 specifically provides:

> If the medical supervisor reports that the person appears to have achieved competency after a finding of incompetency, the court shall hold another competency hearing to determine if the person has achieved competency. If competency has been achieved, the criminal proceedings shall be resumed.

This provision was never triggered in the present case as appellant was never found to be incompetent. Therefore, whether § 1175.8 improperly places the burden of proving incompetence on a defendant after he has already been found incompetent to stand trial is not an issue properly before this court at this time. Moreover, we find it has no bearing on our analysis here.

Appellant contends next that *Medina* is distinguishable because the standard of proof in competency hearings in Oklahoma is heavier than the standard of proof reviewed in *Medina.* Oklahoma requires that the defendant prove incompetency by clear and convincing evidence. Whereas, the California statutes reviewed in *Medina* required a defendant to prove incompetency by a preponderance of the evidence. This Court recently rejected this contention in *Cooper v. State,* 889 P.2d 293, 66 OBJ 166, 170–71 (Okl.Cr.1995) wherein we found no due pro-

cess violation occurs by requiring a defendant to prove his incompetence by clear and convincing evidence. We are not persuaded to find otherwise now.

Finally, appellant contends that the burden of proof should at least be shifted to the State in cases remanded for a retrospective competency determination. In support of his contention, appellant refers this Court to *James v. Singletary,* 957 F.2d 1562 (11th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 262, 126 L.Ed.2d 214 (1993). The court in *James* distinguished procedural claims filed pursuant to *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) and substantive claims of incompetency. The Court found that *Pate* created a "rebuttable presumption of incompetency" upon a showing that the trial court failed to hold a concurrent competency hearing. Contrary to appellant's assertion, however, *James* does not find that the State bears the absolute burden of rebutting this presumption by proving that the petitioner had in fact been competent at the time of his trial. Rather, once the "rebuttable presumption of incompetency" is created, the court specifically stated:

> ... it was now on the state to take the significant threshold hurdle of demonstrating that the petitioner's competency at the time of trial could be determined *ex post facto,* often years after the trial had occurred. *See Zapata v. Estelle,* 588 F.2d 1017, 1020–22 (5th Cir.1979).

*Id.* at 1571.

Our treatment of *Pate* claims comports with the *James* decision. As previously discussed, the feasibility of making a meaningful retrospective competency determination must first be determined. As occurred in the instant case, the State bears the burden of proving that such a determination is possible. *See Lokos v. Capps,* 625 F.2d 1258, 1262 (5th Cir.1980), *rehearing denied,* 631 F.2d 732. An appellant will only bear the burden of proving his incompetency if the State can successfully meet this burden. Otherwise, the appellant is presumed incompetent, and the case must be reversed and remanded. *See Thomas v. State,* 777 P.2d 399 (Okl.Cr.1989). A retrospective com-

petency determination is only feasible in those cases where credible and competent evidence still exists. Thus, inherent in a finding of feasibility is the conclusion that the defendant will be placed in a position comparable to the one he would have been placed in prior to the original trial. Under these circumstances, no due process violation occurs by ultimately placing the burden of proving incompetency on the defendant in a retrospective competency hearing.

Therefore, for the above stated reasons, we do not find that 22 O.S.1991, § 1175.4 improperly places the burden of proof on the defendant to prove his incompetence by clear and convincing evidence.

### C.

■ Citing *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), appellant asserts that the jury's verdict finding him competent to stand trial in 1987 is erroneous as the jury was never required to determine if he had a rational as well as a factual understanding of the proceedings against him at the time of his 1987 trial. The Court in *Dusky* stated:

> ... it is not enough for the district judge to find that 'the defendant [is] oriented to time and place and [has] some recollection of events,' but the 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'

*Id.,* 362 U.S. at 402, 80 S.Ct. at 788–789, 4 L.Ed.2d at 825. Appellant submits that Oklahoma's definition of competency does not require the defendant to have a rational as well as a factual understanding of the proceedings, but merely requires he understand the "nature" of the proceedings. 22 O.S. 1991, § 1175.1(1). This Court recently rejected this same argument in *Lambert v. State,* 888 P.2d 494, 497–98, 65 OBJ 4111, 4112–13 (Okl.Cr.1994). *See also Perry v.*

*State,* 893 P.2d 521, 526–27, 65 OBJ 1350, 1352 (Okl.Cr.1995). We do so here again.[1]

### D.

■ Appellant contends next that statements made by Juror Nix in front of the jury panel impermissibly tainted the jury panel. Consequently, appellant asserts the trial court erred when it denied his request for a mistrial or in the alternative his request to reopen voir dire. The trial court employed a "struck jury" method of jury selection in which twelve jurors were called to the box and questioned. After twelve jurors had been passed for cause, but before each side had begun exercising their three peremptory challenges, the following occurred:

> JUROR NIX: Judge, I have a question. Will the decision of the trial today generally affect the discussion and judgment of '87?
>
> THE COURT: I don't think I'm prepared to, nor can I answer that now. I don't think that is with the things, you know, to be considered by you in this case. If it is, I'll instruct you further, you know, at the end of the case. I can't answer at this point, okay. I say okay but I know—I'm obviously not answering your question and furthermore I'm probably not going to.
>
> JUROR NIX: I don't believe I could serve if it would change the verdict of the '87, if that trial was already—
>
> THE COURT: Let me talk to you alone. I'll excuse—

(C.Tr. 90–91).

Thereafter, Judge Mathews spoke to the attorneys outside the presence of the jury. Defense counsel requested a mistrial arguing that Juror Nix's comments had tainted the entire jury panel. This request was denied. Defense counsel then requested that voir dire of the entire panel be reopened on the issue or, in the alternative, that the jury be instructed further regarding Juror Nix's statements. Judge Mathews responded by stating that he would rule on appellant's request after he voir dired Juror Nix further.

---

1. In addition to *Dusky,* appellant cites *Lafferty v. Cook,* 949 F.2d 1546 (10th Cir.1991), *cert. denied* 504 U.S. 911, 112 S.Ct. 1942, 118 L.Ed.2d 548 (1992) in support of his contention. Although

the *Lambert* decision does not directly address the Tenth Circuit's decision in *Lafferty,* we find that *Lafferty* does not affect the Court's analysis in *Lambert.*

After questioning her individually, the trial court excused Juror Nix for cause. The proceedings were then resumed. A ruling on appellant's motion to reopen voir dire was never made, nor did defense counsel reassert the issue.

■ The decision whether to grant or deny a motion for mistrial lies within the sound discretion of the trial court. *Riley v. State,* 760 P.2d 198, 199 (Okl.Cr.1988); *Leigh v. State,* 698 P.2d 936 (Okl.Cr.1985). In the present case, Judge Mathews properly advised Juror Nix that she was not to consider what effect, if any, the competency hearing would have on appellant's 1987 convictions. Moreover, defense counsel had previously advised the jury during voir dire of the following:

> ... One thing that concerns me about a competency trial is we have been upfront with you and told you that Mr. Tate has already gone to a trial on the murder case and been convicted. You may have strong opinions about that—about a lot of things involving murder and the justice system but does everyone understand that we're here just to decide his competency and if you you [sic] decide that he is not competent it doesn't mean he walks out of the courtroom a free man. This is a decision that has to be made along the way. Does everyone understand that he doesn't walk free if you find him incompetent?

(C.Tr. 68–69). In light of these circumstances, we do not find the trial court abused its discretion when it denied appellant's motion for a mistrial.

■ We further find no error occurred when the trial court failed to reopen voir dire. Calling the jury's attention to Juror Nix's statements again by reopening voir dire could have easily caused more damage than good. Furthermore, the record is devoid of any evidence that the jury panel was tainted by Juror Nix's statements. We also cannot ignore the fact that defense counsel failed to pursue his request for additional voir dire. This appears to have been a tactical decision by defense counsel. After the proceedings were resumed, two more potential jurors were voir dired before twelve jurors were again passed for cause. On both occasions, defense counsel reiterated that appellant would not be set free if the jury found him incompetent. In light of this action, we must assume appellant decided to utilize a more subtle approach to defuse the potential problem. Consequently, this allegation of error fails.

### E.

■ Finally, appellant submits the jury's determination that he was competent to stand trial in 1987 was not reasonably supported by competent evidence. We disagree. The question of present competency is a determination of fact and the standard of review on appeal is whether there was any competent evidence reasonably supporting the trier of fact on the question. *Miller v. State,* 751 P.2d 733, 737 (Okl.Cr.1988). *See also Bryson v. State,* 876 P.2d 240, 65 OBJ 1951, 1953 (Okl.Cr.1994). In the instant case, the jury had ample evidence upon which to find appellant competent to stand trial in 1987.

Dr. Larry Prater evaluated appellant prior to his 1987 jury trial. Dr. Prater testified that appellant seemed to have a good understanding of the legal system. Appellant understood that his attorney was to defend him and the State's attorney was to prosecute him. He further understood that the jury's obligation was to reach a decision, and the judge was to keep order. Appellant was also aware that there were different degrees of murder and different types of punishment. Dr. Prater testified that he found it unique that appellant called him by name during the evaluation.

Irven Box and Diane Clowdus, appellant's trial attorneys in 1987, also testified at the competency trial. Mr. Box testified that his ability to defend appellant was hindered by the need for a psychiatrist or psychologist to assist him in preparing a defense. Without such assistance, Mr. Box testified he did not have the ability to defend appellant. However, Box stated this hinderance was not created by appellant's incompetency to stand trial. Diane Clowdus testified that appellant had a rational as well as a factual understanding of the charges against him. She further testi-

fied that appellant was able to rationally and effectively assist her in the preparation of his defense. Ms. Clowdus stated that she would have asked for a competency hearing if she had thought appellant was incompetent. These are very skilled criminal defense lawyers. If they saw a problem, they would have raised the issue. None was raised.

Tim Wilson, who represented appellant through preliminary hearing, testified that he felt appellant was incompetent to assist him, not because he did not have an understanding of the charges but because he was "wrapped too tight" and full of rage. Mr. Wilson was also concerned that appellant would decide to testify and would testify in an inappropriate manner because of his anger and rage.

Two police officers who had been in contact with appellant near the time of the crime also testified at the competency trial. Bonnie Walker, a police officer for the City of Midwest City, had investigated the double homicide when appellant murdered his ex-wife and Jeffrey White. She talked to appellant for over an hour and a half and testified that he appeared to understand her questions and comments. She further testified that appellant laughed and cried at the appropriate times and was able to give her an understandable version of what happened that day. Charles Robert, another Midwest City police officer, was employed with the Department of Probation and Parole at the time of appellant's 1987 trial. Roberts prepared a pre-sentence investigation of appellant. He testified that appellant answered his questions appropriately and remained calm.

Sandra Stensaas and Patrick Morgan, the prosecutors who tried the case in 1987, also testified regarding their observations of appellant prior to and during the 1987 trial. Mr. Morgan recalled appellant being an active part of the defense team. He testified appellant took notes and conversed with his counsel. When Mr. Box requested a psychiatrist at public expense, Ms. Stensaas recalled appellant indicating to the trial court that he was not insane and did not want to proceed on those grounds. Ms. Stensaas

further testified regarding the interaction between appellant and his trial counsel.

Based upon this evidence, we find there was more than sufficient evidence upon which the jury could reasonably find appellant was competent to stand trial in 1987. This proposition is without merit.

## II. PRE–TRIAL ISSUES

### A.

 Pursuant to *Ake v. Oklahoma*, 470 U.S. 68, 83, 105 S.Ct. 1087, 1096, 84 L.Ed.2d 53, 66 (1985), appellant contends in his second assignment of error that the trial court erred when it denied his Motion for Continuance and Application for Court Funds to Pay for Psychiatric Examination. Upon review, we find no error.

The Supreme Court in *Ake* found that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is likely to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." 470 U.S. at 83, 105 S.Ct. at 1096, 84 L.Ed.2d at 66. In the instant case, appellant wholly failed to make the threshold showing to the trial court that his sanity at the time of the offenses was likely to be a significant factor at trial. "Mere undeveloped assertions that psychiatric assistance would be beneficial is insufficient to meet the preliminary showing requirement in *Ake*." *Castro v. State*, 745 P.2d 394, 399 (Okl.Cr.1987), *cert. denied*, 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988). Consequently, this proposition of error fails.

### B.

In his twenty-fifth assignment of error, appellant claims the trial court erred when it denied his Motion to Strike the Bill of Particulars. Appellant contends Oklahoma's death penalty statutes are unconstitutional as they allow unbridled prosecutorial discretion in seeking the death penalty. This issue was addressed in *Romano v. State*, 847 P.2d 368, 392–393 (Okl.Cr.1993), *aff'd*, —— U.S. ——,

114 S.Ct. 2004, 129 L.Ed.2d 1 (1994). As discussed therein, appellant has the burden of demonstrating the government's prosecution of him was based upon impermissible discriminatory grounds. *Id.* at 393. Appellant has failed to demonstrate this occurred in the present case. Furthermore, we again find that sufficient guidelines exist to properly direct a prosecutor in making the decision to seek the death penalty.

### III. ISSUES RELATING TO JURY SELECTION

#### A.

■ Appellant asserts in his third assignment of error that the trial court erred when it failed to *sua sponte* excuse for cause three potential jurors who stated that they would be unable to consider the appellant's background in deciding whether he should receive the death penalty. These three potential jurors were Cates, Swaim and Worley. Appellant did not challenge any of these now objectionable jurors for cause. However, the State exercised its seventh peremptory challenge to remove Cates, and appellant utilized his last peremptory challenge to excuse Swaim. Thus, Juror Worley was the only objectionable juror who remained on the jury.

■ It is the duty of counsel to examine jurors on voir dire. Counsel then must discover any facts affecting their qualifications and then reasonably raise any objection that might exist as to any member of the panel. *Stewart v. State,* 757 P.2d 388, 392 (Okl.Cr. 1988). If counsel fails to do so, he waives all but plain error. *Id.* We find no such error occurred here.

First, as Cates and Swaim did not serve on the jury, appellant cannot now be heard to complain. *See Ross v. State,* 717 P.2d 117, 120 (Okl.Cr.1986). Although appellant used his last peremptory challenge to remove Swaim, he has failed to show how this was prejudicial to him. He did request additional peremptory challenges prior to the jury being sworn. However, this request was specifically based upon his concern that the case involved a double homicide. Appellant never expressed any reservations regarding the ability of the remaining jurors to be fair and impartial. Second, appellant has failed to demonstrate that Juror Worley was unwilling to follow the law. Worley expressly stated that he could and would give equal consideration to both the potential punishments of life or death. He further stated that he could be a fair juror both for the State and appellant. In light of the record presented, we do not find any error requiring reversal.

#### B.

■ In his fourth proposition of error, appellant contends that the trial court erred when it denied his request for individual voir dire of potential jurors regarding their views on capital punishment. As a result, appellant asserts some jurors were improperly exposed to irrelevant, inflammatory and prejudicial statements of other potential jurors which deprived him of his right to an impartial jury. This Court has consistently held there is no right to individual voir dire. *Trice v. State,* 853 P.2d 203, 209 (Okl.Cr.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 638, 126 L.Ed.2d 597 (1993); *Duvall v. State,* 825 P.2d 621, 632 (Okl.Cr.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992); *Douma v. State,* 749 P.2d 1163, 1165 (Okl.Cr. 1988). The decision to permit individual voir dire rests within the sound discretion of the trial court. *Trice* at 209. We have reviewed the transcript of voir dire in the instant case and find no abuse of discretion. The voir dire proceedings were very thorough and resulted in the fair and impartial jury to which appellant was entitled.

#### C.

■ In addition to his request for individual voir dire, appellant filed a pre-trial motion requesting that the jury be sequestered during the trial. This motion was overruled at the motion hearing conducted on November 12, 1987. In his fifth and sixth assignments of error, appellant contends that the denial of his motion to sequester resulted in jurors being improperly exposed to prejudicial publicity. Once this problem was brought to the court's attention, appellant

submits the trial court also erred when it failed to grant his request for a mistrial.

■ This Court has consistently held that a motion to invoke the rule of sequestration during a trial is left to the sound discretion of the trial court. *Price v. State,* 782 P.2d 143, 147 (Okl.Cr.1989); *Harvell v. State,* 742 P.2d 1138, 1141 (Okl.Cr.1987). "An abuse of discretion will be found only where appellant shows, by clear and convincing evidence, that (1) the jurors were specifically exposed to media reports which (2) were prejudicial to the appellant." *Price* at 147. Mere proof that a juror or jury was exposed to factual accounts of the trial will not meet this burden. *Tomlinson v. State,* 554 P.2d 798, 804 (Okl.Cr.1976).

After the jury was impaneled and sworn in the instant case, the trial court recessed for the night. Prior to the recess, the jury was admonished as follows:

> Now, prior to taking the evening recess, the law again requires that I instruct and direct you not to discuss this case among yourselves during the period of this overnight recess. Do not talk about this case or discuss it either in your presence or in your hearing. And you must, of course, under no circumstances, form or express any opinion concerning the merits of this case until it's been finally and properly submitted to you.

(Tr. 249). However, pursuant to the Oklahoma Uniform Jury Instructions (Criminal), No. 117, the trial court neglected to specifically instruct the jury "not [to] read, or view, or listen to any news report of this trial." The next morning Judge Parr polled the jury and the two alternate jurors to determine if any of them had watched television or heard anything on the radio about the case during the recess. Seven jurors indicated that they had either seen or heard reports regarding appellant's trial. At defense counsel's request, each juror was individually voir dired regarding what he/she had seen or heard. Each juror unequivocally stated that he/she could still be fair and impartial.

■ As the jury was undoubtedly exposed to some media reports, the pivotal issue becomes whether the media reports prejudiced the defendant. After thorough review of the record we find no such prejudice. Each juror clearly stated that he/she could be fair and impartial both to the appellant and to the State. Absent specific evidence to the contrary, this Court must presume that the jurors openly and honestly answered each question posed regarding their exposure to media coverage of the case and its effects.[2]

■ Appellant further contends, however, that the trial court committed reversible error when it failed to instruct the jury pursuant to OUJI–CR 117 not to read, view or listen to any news reports of the trial. While we agree that the jury should have been instructed about media coverage, this error does not require reversal as no prejudice resulted from the oversight. Furthermore, other than this one isolated incident, the jury was properly instructed thereafter.

Based upon the foregoing, we find that the trial court did not abuse its discretion when it denied appellant's sequestration request. Nor do we find the trial court erred when it denied appellant's request for a mistrial.

### D.

■ In his seventh assignment of error, appellant asserts the trial court abused its discretion when it failed to grant his request for additional peremptory challenges. Appellant contends that additional peremptory challenges were necessary because at least four of the remaining jury panel were predisposed to recommend the death penalty rather than life. However, appellant never expressed this concern to the trial court, nor did appellant request that any of the allegedly predisposed jurors be excused for cause. Rather, appellant's request for additional peremptory challenges at trial was specifically based upon his concern that the case involved a double homicide (Tr. 235–236). In

---

**2.** It is also extremely unlikely that the media reports could have had any effect on the jury's finding of guilt as the evidence against appellant was overwhelming. Whether the media cover-

age affected the penalty phase of trial need not be addressed as appellant's sentence of death must be reversed and remanded to District Court for resentencing.

*Gray v. State,* 650 P.2d 880, 884 (Okl.Cr. 1982), this Court held that additional challenges are not warranted when two charges are tried in the same proceeding or when the defendant is facing multiple counts from a single information. Thus, the trial court did not err in denying his request for additional challenges.

### E.

Finally, appellant maintains in his twenty-fourth assignment of error that Oklahoma's method of venire panel selection is unconstitutional as it systematically excludes jurors over 70 years of age who have the option of declining to serve on jury duty. We have addressed this same issue on numerous occasions. *Brown v. State,* 871 P.2d 56, 63 (Okl. Cr.1994); *Romano v. State,* 847 P.2d 368, 376 (Okl.Cr.1993); *Fox v. State,* 779 P.2d 562, 566–567 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990). We find no reason to revisit this issue again. Therefore, this proposition of error fails.

### IV. ISSUES RELATING TO GUILT–INNOCENCE

■■■■■ In Supplemental Proposition I, appellant alleges that the trial court erred when it failed to instruct the jury on his defense of insanity and the lesser included offenses of First Degree Manslaughter and Second Degree Murder. This issue is not properly before this Court as it was never raised in appellant's brief in chief.[3] *Castro v. State,* 745 P.2d 394, 404 (Okl.Cr.1987), *cert. denied,* 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988). Appellant filed a Supplemental Brief with this Court nearly a year after his Reply Brief had been filed. This brief contained six new propositions of error for appellate review. Supplemental briefs are intended to be restricted to supplementation of authorities bearing on issues raised in the brief in chief. *Id.* Although this may appear to be a harsh rule, there must be finality in the briefing process at some point in the appeals process.

---

**3.** Appellant did not allege any error occurred during the first stage of trial in his original brief in chief.

In any event, we have reviewed appellant's claim and find no error. The evidence presented in the instant case was insufficient to warrant the trial court instructing on insanity or any lesser included offenses. *Wooldridge v. State,* 801 P.2d 729, 733 (Okl.Cr. 1990) (trial court properly refused to instruct the jury on the defense of insanity where there was no evidence tending to rebut the presumption of sanity); *Boyd v. State,* 839 P.2d 1363, 1367 (Okl.Cr.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3005, 125 L.Ed.2d 697 (1993) (defendant is entitled to an instruction on a lesser included offense only when the evidence presented warrants such an instruction).

Appellant contends in Supplemental Proposition IV that his rights to due process were denied when portions of his trial were unreported and therefore unavailable for review on appeal. *Kelly v. State,* 692 P.2d 563, 565–66 (Okl.Cr.1984). We again find that this issue is not properly before this Court at this time as it was not properly raised in appellant's brief in chief. Furthermore, upon review we find that no error occurred. An off-the-record discussion was had just prior to and immediately after a stipulation concerning the medical examiner's testimony being read into the record. It is apparent to this Court that the off-the-record discussion dealt with the stipulation. Moreover, as the discussion was had outside the hearing of the jury, there can be no argument the discussion unduly influenced them in any way. Thus, no Eighth Amendment violation could have occurred. *Allen v. State,* 871 P.2d 79, 86–89 (Okl.Cr.1994).

### V. ISSUES RELATING TO PUNISHMENT

■■■■■ We need not address the majority of appellant's second stage issues as we find error requiring reversal of appellant's sentence of death for the murder of Rosalee Tate. Life imprisonment and death were the only sentencing options given to the jury with regards to Counts I and II. This was error. Pursuant to 21 O.S.Supp.1987,

§§ 701.9 and 701.10, which came into effect just prior to appellant's trial,[4] the jury should have also been instructed on the punishment of "life without parole". Failure of the trial court to so instruct renders the sentencing stage fundamentally unfair as to appellant's conviction for the murder of Rosalee Tate (Count I). *Fontenot v. State*, 881 P.2d 69, 74 (Okl.Cr.1994); *Humphrey v. State*, 864 P.2d 343, 344 (Okl.Cr.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1663, 128 L.Ed.2d 379 (1994); *Salazar v. State*, 852 P.2d 729 (Okl.Cr.1993); *Hain v. State*, 852 P.2d 744 (Okl.Cr.1993). However, we find appellant's life sentence for the murder of Jeffrey White (Count II) and his ten (10) year sentence for the offense of Pointing a Firearm (Count III) were not prejudiced by this error.

We have reviewed each of the remaining allegations of error and find they either have no bearing on or relevance to appellant's convictions for Counts II and III. Therefore, the judgment and sentences in Counts II and III are **AFFIRMED.** Appellant's conviction for the murder of Rosalee Tate is **AFFIRMED,** however; his death sentence is **REVERSED** and the matter **REMANDED** to District Court for resentencing.

LANE, J., concurs.

CHAPEL, V.P.J., and STRUBHAR, J., concurs in result.

LUMPKIN, J., concurs in part/dissents in part.

LUMPKIN, Judge, concurring in part and dissenting in part:

I agree the judgments on all three counts should be affirmed, and agree the sentences on Counts II and III should be affirmed; however, I disagree the death sentence on Count I must be reversed and a new sentencing proceeding held.

I agree with the Court's denial of Appellant's claim our competency statutes are unconstitutional based on our previous decision in *Cooper v. State*, 889 P.2d 293, 66 OBJ 166, 170–171 (Okl.Cr.1995). A defendant's incompetence to stand trial is not the same as his sanity at the time of the offense, which *is* a defense. Incompetence—the ability to understand the nature of the proceedings and consult with one's attorney—is not a defense to the charges leveled against a defendant; rather, it is a bar to the continuation of criminal proceedings when properly raised.

I also wholeheartedly agree with the Court's holding six new propositions of error filed in a supplemental brief are not properly before the Court. I also agree with the statement "there must be finality in the briefing process at some point in the appeals process." *ante* at 1193. I am therefore somewhat puzzled as to why the Court first bars the propositions, then "[i]n any event" "reviewed appellant's claim." *Id.* The only possible answer is that the Court holds the propositions are barred, and the discussion following the holding is mere dicta. If that is the intention, I concur.

Finally, I recognize the Court is adhering to *stare decisis* in holding the death sentence must be reversed and remanded for a new sentencing hearing because the option of life without parole was not given to the jury; however, I continue to adhere to my philosophy the sentence options to be given are those which are in effect at the time the crime is committed. *See Hain v. State*, 852 P.2d 744, 753 (Okl.Cr.1993) (Lumpkin, P.J., concurring in part and dissenting in part); *Salazar v. State*, 852 P.2d 729, 741 (Okl.Cr. 1993) (Lumpkin, P.J., concurring in part and dissenting in part).

4. The provisions of Sections 701.9 and 701.10 which allow for a sentence of life without parole became effective on November 1, 1987. Appellant's trial began on November 16, 1987.