**Clyde Ray HARVELL, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–85–187.**

Court of Criminal Appeals of Oklahoma.

Aug. 28, 1987.

Whit Pate, Poteau, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Clyde Ray Harvell, appellant, was tried by jury and convicted of Second Degree Arson [21 O.S. 1981, § 1402], in case No CRF–84–161, in the District Court of Le-Flore County, before the Honorable Ted Knight, Associate District Judge. The jury set punishment at fifteen (15) years imprisonment and a $20,000.00 fine. Judgment and sentence was imposed in accordance with the jury's verdict. We affirm.

Clyde and Robbie Harvell were twice married to each other. Their home was awarded to Mrs. Harvell as her separate property in the first divorce. After Mrs. Harvell filed for the second divorce, the appellant was ordered by the court to vacate the premises. On the evening of June 21, 1984, the appellant made several trips to the house in Mrs. Harvell's absence and removed his personal property. Early on the morning of June 22, the appellant returned to the house one more time, and the house burned down immediately following that last visit.

At trial, the appellant testified he returned to the house to remove his personal property after an evening of drinking beer. He testified that on his last trip to the house he got hungry and started frying chicken. Discovering he was out of beer, the appellant drove to a convenience store and bought more beer. When he returned to the house, he discovered the chicken, which had been left cooking on the stove in his absence, had caught fire. The appellant spilled the burning grease on the floor and the house, in turn, caught fire. The appellant then fled the house without calling the fire department. The alarm was turned in by a neighbor.

The Fire Marshall, a State chemist, and an insurance investigator all testified that the fire resulted from arson. The hottest part of the fire was in the living room at the opposite end of the house from the kitchen, the carpets in the living room and in two bedrooms had been drenched with an unidentified petroleum based accelerant, and the kitchen had not suffered fire damage, only smoke, heat and water damage. No frying pan was found on the floor, nor was there any evidence that the kitchen stove had burned.

Mrs. Harvell testified that the appellant told her she would never have any peace if she did not drop the divorce proceedings. On rebuttal, Mrs. Harvell testified she had no chicken in the house on the evening of the fire.

Mrs. Harvell's sister testified that the appellant, while drunk, subsequently confessed to her that he set the fire in Mrs. Harvell's house. Two neighbors, a mother and her son, testified they saw the appellant make several trips into the house on the evening in question. On the last trip, they saw him carry what looked like a gas can into the house. The mother testified that when the appellant left the house after carrying the container inside, she saw him throw a burning object into the house as he was leaving. Both witnesses testified the house was afire as the appellant drove away.

For his first assignment of error, the appellant asserts that he was deprived of a fair trial because the prosecutor made an extrajudicial statement to the press, which constituted misconduct, and by the attendant adverse pretrial publicity flowing from that statement. Mrs. Harvell's house burned on June 22, 1984. On July 17, the appellant's stepson, Tony, disappeared and was found dead on July 21. Tony had been shot in the head. On July 26, two articles appeared on the front page of the Poteau News & Sun. It was reported in the first article that the District Attorney had a key suspect in Tony Harvell's death. The identity of this suspect was not revealed. Juxtaposed to this article was another article which reported that the appellant had been charged with arson in connection with the house fire.

On August 5, 1984, the Poteau News & Sun reported on the front page that the appellant had been arrested for his stepson's death. The charges of murder and arson were intermingled in this article. The article further reported that District Attorney "Sullivan said Harvell was charged after he reportedly told a series of friends that he killed his stepson, but the DA would not reveal why the younger Harvell was murdered." The murder charges against the appellant were subsequently dropped.

The appellant did not seek a change of venue, nor did he raise the issue of pretrial publicity until time of sentencing, when he presented his Motion for a New Trial. The appellant asserts now, as he did at the hearing on his motion for a new trial, that the District Attorney disseminated a false story to the media that the appellant made an extrajudicial confession that he killed Tony Harvell. In support of this allegation of prosecutorial misconduct, the appellant offers the uncontradicted testimony of a reporter for the Poteau News & Sun, Mr. Bill Baggett, which was given at the hearing on the motion for a new trial, that he interviewed the District Attorney over the telephone, that the District Attorney gave Mr. Baggett the information concerning the appellant's confession quoted above, and that the District Attorney knew Mr. Baggett was a reporter.

■ Under the ABA Standards for a Fair Trial and Free Press, Standard 8–1.1 (1978), an attorney is subject to discipline if he or she reveals "the existence or contents of any confession, admission, or statement given by the accused, or the refusal or failure of the accused to make a statement," [Standard 8–1.1(b)(ii) ] if such communication would pose a clear and present danger to the fairness of a trial [Standard 8–1.1(a) ]. Under the ABA Standards on The Prosecution Function, Standard 3–1.-3(b) (1979), the release of information in contravention of Standard 8–1.1 and of the Code of Professional Responsibility is unprofessional conduct. Likewise, under the Code of Professional Responsibility, DR 7–107(B)(3), an attorney is subject to discipline if he or she reveals "[t]he existence or contents of any confession, admission, or statement given by the accused or his refusal or failure to make a statement." 5 O.S.1981, Ch. 1, App. 3. The issue is whether the prosecutor's extrajudicial statement, albeit a violation of a disciplinary rule, deprived the appellant of a fair trial. This Court will neither condone nor tolerate any act by an officer of the court which has the potential of depriving a defendant of a fair trial, especially when that act is a clear violation of a disciplinary rule arising from the Code of Professional Responsibility. While we strongly disapprove of the prosecutor's extrajudicial statement made here, disciplinary rules merely establish standards which, if violated, subject an attorney to discipline. They do not establish the parameters of the constitutional right to a fair trial. *State v. Wixon*, 30 Wash.App. 63, 631 P.2d 1033, 1038 (1981). The intent of the prosecutor in releasing the statement to the press is not necessarily the determinative factor. What is important is the effect which may ensue and whether the comment and the attendant adverse pretrial publicity had a prejudicial effect on prospective jurors. *In re Burrows*, 290 Or. 131, 618 P.2d 1283, 1285 (1980). To resolve this question we turn to the record.

On voir dire one juror was excused for cause and ten were excused by peremptory challenge. Of the eleven jurors excused, four revealed they had generally heard something about the arson case and two admitted reading about the case in the newspapers, although the articles in question were not identified as the source of their information. Of the twelve jurors and one alternate who heard the case, two admitted to hearing something generally about the case and one admitted to reading something generally about the case in the newspaper, although, again, the articles in question were not identified as the source of that juror's information. All jurors responded that they would not let anything they might have heard outside the courtroom interfere with their ability to be fair and impartial. No mention was made of the murder charges, which had not been

dropped at the time of the arson trial. No reporters were present in the courtroom during trial, and only one television camera was set up in the hallway at the beginning of trial.

The appellant does not support his assignment of error of prosecutorial misconduct in making the extrajudicial statement with citation of authority but does support his assignment of error of adverse pretrial publicity with *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Estes v. State of Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); and *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). None of these cases are on point. In each of these cases the United States Supreme Court overturned the convictions because the trial atmosphere had been utterly corrupted by press coverage. *Murphy v. Florida,* 421 U.S. 794, 798, 95 S.Ct. 2031, 2035, 44 L.Ed.2d 589 (1975). In *Irvin,* the rural community had been subjected to a "barrage of inflammatory publicity" and eight of the twelve jurors had formed an opinion of guilt before the trial began. Here, two rural newspaper articles, one published seven weeks before trial and the other six weeks before trial, and one television camera in the hallway of the courthouse hardly make for a "barrage of inflammatory publicity." Nor is there any evidence from reviewing the record that the jurors here were predisposed to convict. Further, the *Sheppard* and *Estes* trials were conducted in a circus atmosphere in which the courthouse was given over to the press. *Murphy, supra* at 798–99, 95 S.Ct. at 2035–36. Such a situation was not present here.

■ In *Walker v. State,* 723 P.2d 273 (Okl.Cr.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986), we applied a two part test derived from *Murphy v. Florida, supra,* to determine whether an appellant was deprived of a fair trial as a result of pretrial publicity. First, prejudice will be presumed if the fact pattern reveals that the influence of the news media, either in the community at large or in the courtroom itself, pervaded the proceedings. Second, if the facts are not suffi-

ciently egregious to give rise to the presumption, the totality of the circumstances will be examined to determine whether the defendant received a trial which was fundamentally fair. *Walker, supra* at 278.

■ Here, there is no evidence of the egregious publicity which so pervaded the *Sheppard, Estes* and *Irvin* trials. We refuse to apply the presumption that a due process violation occurred in this case. Although three jurors had generally heard something about the case before trial, a qualified juror need not be totally ignorant of the facts and issues involved. *Walker, supra* at 278. It is enough that the jurors can set aside their impressions or opinions and render a verdict based on the evidence presented in court. *Murphy, supra* 421 U.S. at 800, 95 S.Ct. at 2036. Applying the totality of the circumstances test, we find the appellant was not deprived of a fair trial, and the appellant has not shown that he was prejudiced by the prosecutor's extrajudicial statements, the pretrial publicity, or the jury selection process. In light of the strong evidence of guilt, we cannot say that the prosecutor's conduct was so prejudicial as to undermine confidence in the jury's verdict. Therefore, the appellant's conviction is affirmed. Although this writer believes that the improper conduct of the prosecutor may have influenced the sentence imposed so as to warrant a modification, a majority of this Court holds otherwise.

■ For his second assignment of error, the appellant asserts that the trial court's denial of his request that the jury be sequestered overnight to protect them from exposure to media reports deprived him of a fair trial. The decision whether to invoke the rule of sequestration rests in the sound discretion of the trial court and is not an absolute right of the defendant. *Matricia v. State,* 726 P.2d 900, 903 (Okl.Cr.1986); *Collums v. State,* 695 P.2d 872, 875 (Okl. Cr.1985); *Tomlinson v. State,* 554 P.2d 798, 802 (Okl.Cr.1976). An abuse of discretion will only be found where the appellant shows, by clear and convincing evidence, that (1) the jurors were specifically exposed to media reports which (2) were prejudicial

to the appellant. *Collums, supra* at 875; *Tomlinson, supra* at 804. The appellant offers no evidence, much less clear and convincing evidence, that the jurors were exposed to media reports during trial, nor does the record reflect that the appellant was prejudiced by the failure to sequester the jury. This assignment of error is without merit.

For his final assignment of error, the appellant argues he was deprived of a fair trial because of improper closing arguments by the prosecutor. We observe initially that the appellant failed to object at trial to the closing arguments he now claims are error. Failure to object constitutes a waiver of error unless it is fundamental. *Tobler v. State*, 688 P.2d 350, 353 (Okl.Cr.1984); *Tucker v. State*, 675 P.2d 459, 461 (Okl.Cr.1984). In reviewing both the appellant's closing argument and the prosecutor's comments explaining the statements made by the appellant in closing, we find the appellant invited the prosecutor's response. Having invited the response, the appellant cannot now complain because the prosecutor rose to the bait. *Penn v. State*, 684 P.2d 562, 564 (Okl.Cr. 1984). This assignment of error is without merit.

Finally, with regard to the misconduct of District Attorney Don Sullivan in releasing an extrajudicial statement to the press in violation of DR 7-107(B)(3), the clerk of this Court is directed to forward a copy of this opinion to the General Counsel of the Oklahoma Bar Association for such investigation and action as may be deemed appropriate.

Finding no merit to the appellant's assignments of error, the judgment of the District Court should be, and hereby is, AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.