BEVER v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:BEVER v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 BEVER v. STATE
2020 OK CR 13
Case Number: F-2018-870
Decided: 06/25/2020
MICHAEL JOHN BEVER, Appellant v. THE STATE OF OKLAHOMA, Appellee.

Cite as: 2020 OK CR 13, __ __

 

O P I N I O N 
LUMPKIN, JUDGE:
¶1 Appellant Michael John Bever was tried by jury and found guilty of five (5) counts of First Degree Murder (Counts I-V) (
21 O.S.Supp.2012, § 701.7(A)) and one count of Assault and Battery with Intent to Kill (Count VI) (21 O.S.2011, § 652(C)) in the District Court of Tulsa County, Case No. CF-2015-3983. The jury recommended as punishment life in prison in each of Counts I-V, and twenty-eight (28) years in prison in Count VI. The trial court sentenced accordingly, ordering the sentences to be served consecutively.[1] It is from this judgment and sentence that Appellant appeals.
¶2 On July 22, 2015, in Broken Arrow, Oklahoma, 16-year-old Appellant and his 18-year-old brother, Robert Bever, murdered their mother, father, younger sister and two brothers, and severely wounded another sister. The youngest sister, who was almost two (2) years old, survived unharmed.
¶3 Robert Bever pled guilty to five (5) counts of first degree murder and one count of assault and battery with intent to kill. He was sentenced to life in prison without the possibility of parole for each of the five (5) murders and a life sentence for the assault with intent to kill. The sentences were ordered to run consecutively. Robert Bever testified for the defense at Appellant's trial. He testified that he did not see Appellant kill anyone and took credit for killing all of his family members. His testimony was frequently at odds with the State's evidence. In particular, while he claimed he did not see Appellant kill anyone, Appellant told police he had killed three (3) of his family members.
¶4 The story of what happened the night of July 22 is drawn largely from the testimony of C.B., Appellant's thirteen-year-old sister; Robert Bever; and Appellant's pre-trial statements to police. Prior to the day of the murders, Appellant and Robert Bever, also referred to as the brothers, had collected body armor and knives to be used in the murder of their family. Those killings were to be a prelude to a cross-country killing spree. The brothers sought to emulate certain serial killers and intended to exceed the body count of recent well-known mass shootings. The brothers had ordered guns that were to be delivered to a local gun shop. They had yet to be picked up, as the brothers needed someone over 21 to actually pick up the guns. The ammunition, over 2,000 rounds, was to be delivered to their home on July 23.
¶5 Late in the evening on July 22, all the family members were in bed except for Appellant, his brother Robert, C.B., and their mother, April Bever. C.B. testified at trial that around 11:30 p.m., her mother told her to tell her brothers to do the dishes. When she went to their bedroom, she found them putting on body armor. She also noticed they had set several knives out on the bed. C.B. had seen them put on the body armor previously and knew about their extensive collection of knives.
¶6 When she arrived in their room, Appellant asked, "should we do it right now?" Robert replied, "yes." Appellant told C.B. to look at something on his computer. When she did, Robert came up behind her and slit her throat. Robert Bever testified that the plan was for C.B. to die quickly and then they would drag her body to the closet. However, C.B. did not die quickly and fought back as Robert repeatedly stabbed her. C.B. ran screaming from the bedroom and headed toward the front door. As she ran, she heard her mother scream. C.B. ran outside but was dragged back inside the house.
¶7 C.B. suffered multiple stab wounds, including some that appeared to be defensive wounds. Several of the wounds were so severe that her internal organs protruded out of her abdomen. When first responders arrived on the scene, she was thought to be near death. However, despite the severity of the wounds and the massive blood loss, she survived.
¶8 Robert then stabbed his mother, April Bever. She fought back aggressively but ultimately succumbed to the approximately 48 stab wounds to her arms, neck, face, chest, and abdomen.
¶9 Robert then asked Appellant where the others were and Appellant replied that they were hiding. A younger brother, ten-year- old C.P.B., and five-year-old sister, V.B., had heard the commotion and run to a bathroom where they locked themselves in. Appellant knocked on the door and said, "let me in. He's gonna kill me". One of the children opened the door, at which time Appellant entered and stabbed both of them to death. C.P.B. had approximately 21 stab wounds to his back, chest, head and neck. V.B. suffered approximately 23 stab wounds to her neck, back, chest, face and abdomen. Both victims had defensive wounds. (At trial, Robert took credit for killing C.P.B. and V.B. However, in pre-trial statements, Appellant admitted to stabbing them).
¶10 Appellant then went to his father's home office where his twelve- year-old brother, D.B., had locked himself inside. Appellant used the same ruse as before, telling D.B. to open the door, that Robert was going to kill him (Appellant). When D.B. opened the door, Appellant said to Robert, "he's all yours". D.B.'s pleas to be spared were ignored. Robert grabbed D.B. and stabbed him in the stomach. Ultimately, D.B. suffered 21 stab wounds to his stomach, chest, head, neck and back.
¶11 At some point, the brothers' father, David Bever, came out of his room and Robert stabbed him repeatedly. David Bever ultimately suffered 28 stab wounds to his back, chest, neck and abdomen.
¶12 During the murder spree, Appellant had disabled the home alarm system. Prior to his death, D.B. used Appellant's phone to call 911. Appellant admitted he took the phone from D.B. and smashed it to the floor.
¶13 With the murders concluded, the brothers ran to a creek behind their house to hide. Officers arrived on the scene at approximately 11:30 p.m. In their subsequent search of the house, they discovered 23-month-old A.B. asleep in an upstairs bedroom, untouched by the murderous rampage which had occurred on the floor below. Robert Bever testified that they had intended to kill A.B. by cutting off her head. However, it appeared the brothers had forgotten about her in the melee.
¶14 The brothers were ultimately located by police and search dogs near the creek. One of the dogs had bitten Appellant in attempt to subdue him. Appellant was covered in dirt and blood. The blood was later determined to be from his mother.
¶15 Forensic testing later showed Appellant's blood was found on a knife handle, and the blade of that knife had a mixture of blood from which his father, C.P.B. and D.B. could not be excluded. For his part in the murder spree, Appellant was convicted of five (5) counts of first degree murder and one count of assault and battery with intent to kill. He was sentenced to life in prison with the possibility of parole for each of the five (5) murders and 28 years imprisonment for the assault with intent to kill. The sentences were ordered to run consecutively.
¶16 In his first three propositions of error, Appellant challenges his sentence. Specifically, in Proposition I he argues that the trial court's order for his sentences to be served consecutively violates the Sixth and Eighth Amendments to the United States Constitution and Oklahoma and Federal case law because the jury's verdict was that he was "not irreparably corrupt and permanently incorrigible." In Proposition II, Appellant argues his consecutive sentences violate the Eighth Amendment to the United States Constitution and Oklahoma and Federal case law because they do not provide him a meaningful opportunity for release. And finally in Proposition III, Appellant contends his sentence is excessive in violation of the Eighth Amendment to the United States Constitution and Oklahoma and Federal case law. To a certain extent, Appellant's propositions overlap. However, we attempt to address them separately.
¶17 The record on which Appellant's arguments are based shows that at the close of the sentencing stage of trial, the jury was instructed as follows:
Should you unanimously find that Michael Bever is irreparably corrupt and permanently incorrigible, you are authorized to consider imposing a sentence of life without the possibility of parole.
If you do not unanimously find beyond a reasonable doubt that Michael Bever is irreparably corrupt and permanently incorrigible, you are prohibited from considering the penalty of life without the possibility of parole. In that event, the sentence must be imprisonment for life with the possibility of parole. 
(Instruction No. 54).
¶18 The jury was also instructed, in part, "no person who committed a crime as a juvenile may be sentenced to life without the possibility of parole unless you find beyond a reasonable doubt that the defendant is irreparably corrupt and permanently incorrigible." (Instruction No. 57).
¶19 As to each murder conviction, the jury found the "Defendant is not irreparably corrupt and permanently incorrigible and sentence the Defendant to life with the possibility of parole." At the sentencing hearing, the judge ordered the five (5) life sentences as well as the 28 years imposed for the assault and battery with intent to kill conviction to be served consecutively.
¶20 The majority of the arguments presented by both sides in the appellate briefs were presented to the trial court in sentencing memoranda from the defense and the prosecution. To the extent Appellant challenges the court's ability to run the sentences consecutively, our review is for abuse of discretion as the state statute leaves that decision in the hands of the trial court. 22 O.S.2011, § 976. However, whether the trial court's ruling is consistent with the current state of the law is an issue this Court reviews de novo. King v. State, 2008 OK CR 13, ¶ 4, 182 P.3d 842, 843.
¶21 In Proposition I, both the State and Appellant set forth the legal background of the evolving principles of law in the area of juvenile sentencing, focusing primarily on Graham v. Florida, 560 U.S. 48 (2010), Miller v. Alabama, 567 U.S. 460 (2012), and Montgomery v. Louisiana, 577 U.S. ___, 136 S.Ct. 718 (2016). The basic premise of Appellant's argument on appeal is that his Sixth and Eighth Amendment rights were violated by the trial court's ordering of his sentences to run consecutively despite the fact the jury found he was not irreparably corrupt and permanently incorrigible.
¶22 Relying primarily on Apprendi v. New Jersey, 530 U.S. 466 (2000) and Ring v. Arizona, 536 U.S. 584 (2002) Appellant argues that the finding of "irreparably corrupt and permanently incorrigible" is equivalent to an aggravator in a death penalty case. He asserts that as the jury in his case acquitted him of the alleged aggravator, this acquittal prohibited the jury from imposing a sentence that would deny him a meaningful opportunity for release. He contends that his right to jury sentencing prohibited the judge from imposing a de facto sentence of life without parole. Appellant contends that under Ring, he may not be exposed to a penalty exceeding the maximum he would have received if punished according to the facts reflected in the jury's verdict. He contends that his five (5) consecutive life sentences did just that in violation of his rights under the Sixth, Eighth, and Fourteenth Amendments.
¶23 It is not necessary for us to determine whether the finding of "irreparably corrupt and permanently incorrigible" is akin to the finding of an aggravating circumstance. The claim on appeal is whether running the sentences consecutively violated federal and state law.
¶24 Initially, none of the authorities cited by either side involves cases of juvenile homicide offenders sentenced to multiple life sentences. Further, none of the authorities cited by Appellant support a conclusion that the trial court's ruling violated federal or state law.
¶25 No cases have been cited or found where the Supreme Court or this Court have held that a defendant is constitutionally entitled to jury sentencing. The Sixth Amendment requires that the trial necessary to impose life without parole on a juvenile homicide offender must be a trial by jury, unless a jury is affirmatively waived. Stevens v. State, 2018 OK CR 11, ¶ 34, 422 P.3d 741, 750 (citing Apprendi, 530 U.S. at 490). However, neither the Supreme Court nor this Court have found a Sixth Amendment right to jury sentencing. In fact, both Miller and Montgomery recognized that it is appropriate for a judge to make sentencing decisions. In Oregon v. Ice, 555 U.S. 160, 168 (2009), the Supreme Court said that Apprendi does not apply to a trial court's decision to run sentences consecutively, even if the court must make findings of fact beyond those made by the jury before imposing consecutive sentences. Judges have long had the discretion to run sentences concurrently or consecutively. Setser v. United States, 566 U.S. 231, 236 (2012).
¶26 Under state law, criminal defendants have a statutory right to have a jury help determine the sentence. 22 O.S.2011, § 926.1. Further, sentences for multiple offenses are to run consecutively unless otherwise ordered by the trial court. 22 O.S.2011, § 976.
¶27 A majority of this Court recently found no Eighth Amendment violation in ordering multiple sentences for juvenile homicide offenders to be served consecutively. In Martinez v. State, 2019 OK CR 7, 442 P.3d 154 the defendant was sentenced to life in prison for one count of first degree murder and fifteen years in each of two counts of shooting with intent to kill with the sentences ordered to run consecutively. Martinez argued, much as Appellant does, that his consecutive sentences constituted a de facto sentence of life without parole for a crime committed as a juvenile and thus, his sentences violated the United States and Oklahoma Constitutions' ban on cruel and unusual punishment pursuant to Miller and Montgomery. This Court disagreed and explained:
. . . even after Graham, Miller, and Montgomery, defendants convicted of multiple offenses are not entitled to a volume discount on their aggregate sentence. Thus, we hold that where multiple sentences have been imposed, each sentence should be analyzed separately to determine whether it comports with the Eighth Amendment under the Graham/Miller/Montgomery trilogy of cases, rather than considering the cumulative effect of all sentences imposed upon a given defendant.
2019 OK CR 7, ¶ 6, 442 P.3d at 156. (internal citation omitted).
¶28 Relying on Graham and Miller, this Court found that a State is not required to guarantee eventual freedom to a juvenile offender. Id., at ¶ 8, 442 P.3d at 157 (citing Graham, 560 U.S. at 74; Miller, 567 U.S. at 479). This Court concluded by finding, "[b]ased upon the length of [Martinez's] sentences and the current status of the law, we find that [Martinez] has some meaningful opportunity to obtain release on parole during his lifetime." Id.
¶29 This finding was upheld in Detwiler v. State, 2019 OK CR 20, 449 P.3d 873, where a majority of this Court said, "[w]e thus find, as we did in Martinez, that the Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence for multiple crimes. To do otherwise would effectively give crimes away." Id., 2019 OK CR 20, ¶ 6, 449 P.3d at 875. While the juvenile defendant in Detwiler was convicted and sentenced for non-homicide offenses, this Court found "[t]he Supreme Court has not explicitly held that stacked sentences imposed in a juvenile case--whether homicide or nonhomicide--should be reviewed in the aggregate when conducting an Eighth Amendment analysis." Id. This Court rejected the contention that the defendant's sentences viewed in the aggregate as though they were one constituted a de facto sentence of life without parole for crimes he committed as a juvenile. "Based upon the length of each of [the defendant's] sentences, viewed individually, and the current status of the law, we find that [the defendant] has some meaningful opportunity to obtain release on parole during his lifetime." Id., 2019 OK CR 20, ¶ 8, 449 P.3d at 875-876.
¶30 The fact that the jury found Appellant was not irreparably corrupt and permanently incorrigible and sentenced him to life in prison for the offense of murder is immaterial to the trial court's discretion to order multiple sentences to be served consecutively. Based upon our review of the current state of both federal and state law, the trial court's order for Appellant's five (5) life sentences to be served consecutively does not violate his constitutional rights despite the jury's finding that Appellant was not irreparably corrupt and permanently incorrigible. Proposition I is therefore denied.
¶31 Much of Appellant's Proposition II is a repeat of the argument in Proposition I. However, his main focus in Proposition II is that the consecutive sentences violate the Eighth Amendment and federal and state case law because the sentence does not provide him a meaningful opportunity for release.
¶32 As addressed in Proposition I, a majority of this Court held in Martinez that the State is not required to guarantee eventual freedom to a juvenile offender and that consecutive life sentences do not deny a juvenile homicide offender a meaningful opportunity for release on parole during his lifetime.
¶33 Appellant now asserts, as this Court noted in Martinez, that both state and federal courts are divided over whether the Eighth Amendment requires individual sentences to be analyzed separately or whether the cumulative effect of multiple sentences is the benchmark for compliance. Appellant's assertion that our rationale in Martinez is "nothing more than the expression of resistance to the clear intent expressed in recent Supreme Court jurisprudence" misses the mark.
¶34 This Court fully recognizes and faithfully discharges its "independent duty and authority to interpret decisions of the United States Supreme Court." Martinez, 2019 OK CR 7, ¶ 5, 442 P.3d at 156. As the State asserts, "there is no reason to believe that this Court, and the many other courts which agree with this Court, are willfully disregarding the Constitution."
¶35 While the Supreme Court has not specifically addressed the issue raised in Appellant's case, the Court's precedent regarding the history and propriety of consecutive sentencing strongly supports this Court's decision in Martinez. A defendant, even a juvenile, who murders five people (and who plans to murder many more) is simply and fundamentally different than a defendant who murders one person. Appellant's arguments have not shown that our decision in Martinez is contrary to established law.
¶36 In a second portion of this proposition, Appellant asserts that the parole system in Oklahoma does not provide the meaningful opportunity for release required by the Eighth and Fourteenth Amendments. This is an entirely separate argument from that challenging the consecutive nature of his sentences as ordered by the trial court. As such, we find it is waived pursuant to Rule 3.5(A)(5), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2020), which requires each proposition of error to be set out separately in the appellate brief. See Baird v. State, 2017 OK CR 16, ¶ 28, 400 P.3d 875, 883.[2] 
¶37 In Proposition III, Appellant claims his sentence is excessive. He does not challenge any of the sentences individually, but argues that his sentences, when considered in the aggregate are excessive and violate the Eighth Amendment. To this extent, his argument is merely a reprise of his first two propositions.

¶38 We typically review claims of excessive sentence under the principle that "this Court will not disturb a sentence within statutory limits unless, under the facts and circumstances of the case, it shocks the conscience of the Court." Kelley v. State, 2019 OK CR 25, ¶ 18, 451 P.3d 566, 572. Here, Appellant received the minimum punishment of life in prison with the possibility of parole for each count of first degree murder. These sentences were within statutory range. 21 O.S.2011, § 701.9(A).
¶39 There is no absolute constitutional or statutory right to receive concurrent sentences. 22 O.S.2011, § 976. It is within the trial court's discretion whether sentences are run concurrently or consecutively. Id. An abuse of discretion is any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the matter at issue. Neloms v. State, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170.
¶40 The record indicates the trial court reached its decision to run the sentences consecutively after much research and deliberation. During the sentencing stage of trial, the State reincorporated all of its first stage evidence. This included evidence that Appellant not only helped plan the massacre of his family but also fully participated in the killings.
¶41 The defense presented three (3) witnesses, Dr. Ana Mazur-Mosiewicz, a licensed clinical psychologist; Assistant Public Defender Adam Barnett; and Sherri Knight, a teacher at the Tulsa County Jail. Dr. Mazur-Mosiewicz testified that she conducted a neuropsychological evaluation of Appellant in May 2016 (two (2) years before trial) at the Tulsa County Jail. She testified that Appellant had an I.Q. of 85, which according to the doctor was in the low range of average intelligence. She testified that his intellectual dysfunction could be the result of traumatic brain injury or a birth defect. Dr. Mazur-Mosiewicz admitted that she did not test Appellant at the time of the crimes. However, it was her opinion that as Appellant was 16 years old at the time of the crimes, and given that his brain had not fully matured by that time, in a high stress environment such as the murder scene, it was very likely Appellant would have frozen in place and not known what to do.
¶42 Mr. Barnett testified that he interacted with Appellant in 2015 when Appellant was in the Tulsa County Jail. Mr. Barnett's impression of Appellant was that he was either "absolutely clueless and naïve as to what was going on or he was institutionalized before he ever came in the door", and that Appellant seemed remorseful.
¶43 Ms. Knight testified that she interacted with Appellant when he was enrolled as a student for the 2015-2016 school year. She said that she provided Appellant with school materials and books to read. It was her opinion that Appellant was respectful and seemed interested in improving himself.
¶44 Additionally, sentencing memorandum prepared by the parties were considered by the judge. Also considered were the wishes of some jurors who had written the judge a letter expressing their desire for the sentences to be run concurrent, as well as a victim impact statement from C.B.'s adoptive mother detailing C.B.'s fear that Appellant would be released from prison and kill her in order to finish what he started.
¶45 Under the facts of the case and the current state of the law, including this Court's holding in Martinez, the trial court did not abuse its discretion in running the sentences consecutively. This proposition is denied.
¶46 In Proposition IV, Appellant contends he was denied due process by numerous instances of prosecutorial misconduct. It is well established that "[w]e evaluate alleged prosecutorial misconduct within the context of the entire trial, considering not only the propriety of the prosecutor's actions, but also the strength of the evidence against the defendant and the corresponding arguments of defense counsel." Sanders v. State, 2015 OK CR 11, ¶ 21, 358 P.3d 280, 286. In a claim of prosecutorial misconduct, "[r]elief is only granted where the prosecutor's flagrant misconduct so infected the defendant's trial that it was rendered fundamentally unfair." Tafolla v. State, 2019 OK CR 15, ¶ 28, 446 P.3d 1248, 1260.
¶47 Appellant initially argues the State failed to preserve relevant evidence. Two items are at issue. The first is a computer hard drive, identified as Item 18, seized from the Bever home and provided to the Oklahoma State Bureau of Investigation (OSBI) for analysis. The OSBI was unable to analyze the hard drive because it would not "initialize." The hard drive was subsequently retrieved, along with other items of evidence, from the OSBI. However, the prosecution was not able to subsequently locate the hard drive for trial purposes.
¶48 The other item is a journal allegedly kept by C.B. which family members had turned over, along with other property from the Bever home, to an auction house once the police had concluded their investigation. An employee of the auction house informed police that she had read a journal that she thought was written by C.B. and which was thought to contain references to child abuse. The journal, or one resembling it, was recovered by the police approximately one year after the murders. There were pages torn out of the journal. The employee who had read the journal could not tell if that was the actual journal she had read. No references to child abuse were found in the journal. No one could identify who tore out the missing pages. The journal became part of the property collected by the Broken Arrow Police Department and was available for inspection by the defense.
¶49 Appellant acknowledges that his challenges to the items were raised before the trial court and that his objections were denied. However, he argues this Court is free to grant relief on the grounds of misconduct "especially when the prosecutorial misconduct in this case is weighed in its totality."
¶50 While Appellant's argument on appeal is prosecutorial misconduct for the failure to preserve evidence, his cited authority is Brady v. Maryland, 373 U.S. 83 (1963) which concerns the prosecution's suppression of evidence. Appellant does not claim that the State actually suppressed evidence after it had been requested by the defense, that the evidence was favorable to his defense, or that the evidence was material either to his guilt or punishment, arguments typical of a Brady claim.
¶51 If Appellant's claim is that of prosecutorial misconduct due to a loss of evidence, there are two (2) lines of Supreme Court cases dealing with a loss of evidence. One line of cases states that a defendant is entitled to relief if he can show that police destroyed evidence which had apparent exculpatory value and he is unable to reasonably obtain comparable evidence. See California v. Trombetta, 467 U.S. 479, 484 (1984). The other line of cases provides a defendant with relief if he can show the police, acting in bad faith, destroyed potentially useful evidence. See Arizona v. Youngblood, 488 U.S. 51, 57 (1988). This Court has recognized and applied both cases. See Martinez v. State, 2016 OK CR 3, ¶¶ 19-29, 37 P.3d 1100, 1108-1110. No relief is warranted in the present case under either Trombetta or Youngblood. Appellant has not argued that either item of evidence was exculpatory. At most, he insinuates the items might have been useful to the defense.
¶52 Regarding the journal, the defense was able to obtain either the actual journal itself or a comparable one. If Appellant's claim is true that the torn out pages referenced abuse, the defense was able to put on evidence of alleged physical abuse from C.B., Robert Bever, and Dr. Manzer-Mosiewicz. Further, the defense did not ask C.B. whether she kept a journal or whether she documented any incidents of abuse.
¶53 As for the computer hard drive, all the evidence showed that it was unreadable. Appellant has made no argument of its materiality.
¶54 Any argument that the loss of the computer hard drive or journal was done in bad faith is not supported by the record. Neither Appellant's cited authorities nor the authorities relevant to a claim of lost evidence nor the record support Appellant's claim of prosecutorial misconduct regarding the handling of the computer hard drive or journal.
¶55 Even assuming Appellant has made any showing of error, this error is harmless beyond a reasonable doubt. Although it does not appear that this Court has considered whether Trombetta and Youngblood errors can be harmless, there appears to be no reason why such errors could not be harmless. In fact, "most constitutional errors can be harmless." Duclos v. State, 2017 OK CR 8, ¶ 11, 400 P.3d 781, 784 (citing Arizona v. Fulminate, 499 U.S. 279, 306 (1991)). Evidence of Appellant's guilt was overwhelming. He received the minimum punishment. Any failure to preserve evidence, which has not been found or even claimed to be material or exculpatory, is harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 24 (1967). Accordingly, this claim of prosecutorial misconduct is denied.
¶56 Appellant further finds prosecutorial misconduct in two comments prosecutors made to the media approximately three (3) months before trial. Defense counsel brought the comments to the attention of the trial court as a violation of the Rules of Professional Responsibility. Now on appeal, his only cited authority are the Rules of Professional Responsibility and attorney discipline cases.
¶57 In Harvell v. State, 1987 OK CR 177, ¶ 10, 742 P.2d 1138, 1140, this Court said, "disciplinary rules merely establish standards which, if violated, subject an attorney to discipline. They do not establish the parameters of the constitutional right to a fair trial." This Court determined that "[w]hat is important is the effect which may ensue and whether the comment and the attendant adverse pretrial publicity had a prejudicial effect on prospective jurors." Id. 
¶58 Appellant does not make a claim of prejudicial pre-trial publicity. The record reflects jurors were thoroughly screened for media exposure and for pre-determined opinions as to Appellant's guilt. Appellant has made no attempt to show that the jurors who sat on his case were prejudiced by the media or any pre-trial statements made by prosecutors. Any misconduct in the prosecutor's comments did not deny Appellant a fair trial.
¶59 Appellant next claims the State directed psychologist Dr. Shawn Roberson to evaluate him for a possible insanity defense without notice to defense counsel. Defense counsel raised this claim many times throughout the trial proceedings. The State consistently maintained that it had the consent of Appellant's prior attorney for Roberson to interview Appellant. In fact, at two (2) of the pre-trial hearings where the issue was raised, defense counsel actually seemed unsure about a lack of notice, stating more than once that he "could be wrong about the [alleged lack of notice/consent]" and that Dr. Roberson met with the defendant "without, I think, proper notice to our office."
¶60 If, in fact, the State did not have approval for any interview, Appellant has failed to show any prejudice. An insanity defense was not pursued and Dr. Roberson did not testify at trial. The defense ultimately provided their expert's raw data to Dr. Roberson. Appellant fails to show how his trial would have been impacted if it had been established that the State had not given the defense notice of Dr. Roberson's interview with Appellant.
¶61 Finally, Appellant complains about two (2) comments made during the State's opening statement, and numerous statements made during the State's closing arguments. We have thoroughly reviewed all of the alleged misconduct. Certain comments were met with contemporaneous objections. In those instances where the objections were sustained, any error was cured. Young v. State, 2000 OK CR 17, ¶ 50, 12 P.3d 20, 37-38. Other objections were overruled by the trial court, and our review is therefore for an abuse of discretion. Certain other comments were not met with any objection. In those instances our review is for plain error. Malone v. State, 2013 OK CR 1, ¶ 40, 293 P.3d 198, 211. Under the plain error test set forth in Simpson v. State, 1994 OK CR 40, 876 P.2d 690, we determine whether Appellant has shown an actual error, which is plain or obvious, and which affects his substantial rights. See Duclos, 2017 OK CR 8, ¶ 5, 400 P.3d at 783. This Court will only correct plain error if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice. Id.
¶62 The challenged comments made in opening statement were well within the scope of opening statement. See Howell v. State, 2006 OK CR 28, ¶ 7, 138 P.3d 549, 556 ("[t]he purpose of opening statement is to tell the jury of the evidence the attorneys expect to present during trial. Its scope is determined at the discretion of the trial court.").
¶63 Regarding closing argument, this Court has long allowed counsel for the parties a wide range of discussion and illustration. Sanders v. State, 2015 OK CR 11, ¶ 21, 358 P.3d 280, 286. Counsel enjoy a right to discuss fully from their standpoint the evidence and the inferences and deductions arising from it. Id. We will reverse the judgment or modify the sentence only where grossly improper and unwarranted argument affects a defendant's rights. Id. It is the rare instance when a prosecutor's misconduct during closing argument will be found so egregiously detrimental to a defendant's right to a fair trial that reversal is required. Tafolla, 2019 OK CR 15, ¶ 28, 446 P.3d at 1260.
¶64 Reviewing the challenged comments made in closing argument for plain error and otherwise, we find the prosecutor's conduct was not so improper or prejudicial so as to have infected the trial so that it was rendered fundamentally unfair. While some comments were objectionable, the trial court's rulings helped to ensure the prosecutor's conduct did not determine the outcome of the trial. See Pack v. State, 1991 OK CR 109, ¶ 17, 819 P.2d 280, 284 (citing 20 O.S. § 3001.1.) No relief is warranted and this proposition is denied.
¶65 In Proposition V, Appellant contends his due process rights were violated by the trial court sustaining the State's objection to the first stage testimony of Dr. Mazur-Mosiewicz on the grounds that the doctor's testimony was not relevant. Appellant asserts the trial court's ruling denied him the fundamental right to present a complete defense as the doctor's testimony was relevant to the voluntariness of his statement to police, his state of mind during the crime, his intellectual functioning as it related to malice aforethought, and to rebut the State's theory that he was responsible for some of the stabbings. On appeal, we review decisions on the admission of evidence for an abuse of discretion. Pullen v. State, 2016 OK CR 18, ¶ 4, 387 P.3d 922, 925. An abuse of discretion is a conclusion or judgment that is clearly against the logic and effect of the facts presented. Id.
¶66 The record indicates that in a bench conference, defense counsel explained that he wanted the doctor to describe her testing, the results of her testing, and her conclusions as an expert in neuropsychology. Defense counsel argued that the doctor would testify that Appellant, "suffers from very specific cognitive limitations" and those limitations should be considered by the jury in the context of whether Appellant's decisions "were fully formed, intentional decisions or whether they were done through the filter of limited cognitive ability."
¶67 The prosecutor responded that in the doctor's report, which had been provided to the court, the doctor never rendered an opinion regarding whether or not Appellant was able to form the necessary intent to kill or whether his confession was voluntary. Defense counsel did not rebut this statement but insisted he just wanted "to present the tests that she ran, the results of those tests, her conclusions as a result of those tests, and then leave it for argument."
¶68 After reviewing the doctor's report, the judge noted that she was concerned by one of the last sentences in the report which read, "[t]he lack of medical records related to Mr. Bever's full medical and developmental history make it difficult to delineate whether his neurocognitive and motor deficits are congenital in nature, represent a decline in function as a result of the reported abuse, or both." Defense counsel did not disagree with the judge but added, "all we know is that he has deficits" and that the jury should be allowed to hear that. The judge reiterated her position that the doctor's explanations did not show that because of these deficits, Appellant committed the charged crimes. The judge ultimately decided that the doctor's testimony was not relevant first stage testimony, as it would not assist the jury in determining guilt or innocence. However, the testimony was found relevant for the punishment stage.
¶69 The defense did not raise a defense based on insanity, mental retardation/intellectual disability, or intoxication. Defense counsel did not make an offer of proof regarding the doctor's testimony. Based on defense counsel's failure to rebut, and his actual acquiescence in the prosecutor's argument that the doctor never rendered an opinion regarding whether or not Appellant was able to form the necessary intent to kill or whether his confession was voluntary, the trial court properly excluded the doctor's testimony in the first stage as it was not relevant to a determination of guilt or innocence. In the absence of any conclusion or testimony that because of any "deficits", mental or otherwise, Appellant either committed or did not commit the charged crimes, merely putting the doctor's tests and results before the jury was not relevant evidence.
¶70 Excluding the doctor's testimony in the first stage did not deny Appellant the opportunity to present a complete defense. In Rojem v. State, 2009 OK CR 15, ¶ 9, 207 P.3d 385, 390 (citing Holmes v. South Carolina, 547 U.S. 319 (2006)), this Court acknowledged that every criminal defendant has a Sixth Amendment right to present a defense. "[T]he Constitution permits judges 'to exclude evidence that is 'repetitive ..., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'" Holmes, 547 U.S. at 326-327.
¶71 No assertions were made before the trial court that the doctor could testify to any reasonable degree of medical certainty that Appellant would not have been able to form the intent of malice aforethought. Defense counsel's attempts to have the doctor testify in first stage to general deficiencies Appellant may have had and then argue that there was no proof that he either killed or had the requisite malice to kill was properly thwarted by the trial court. Excluding the doctor's testimony from the first stage did not deny Appellant the ability to present a complete defense.
¶72 Having thoroughly reviewed Appellant's arguments, we find the trial court did not abuse its discretion in excluding the doctor's first stage testimony and the court's ruling did not deny Appellant his Sixth Amendment rights to present a complete defense. This proposition is denied.
¶73 In Proposition VI, Appellant contends he was denied a fair trial by the admission of "needlessly cumulative" photographs. Specifically, he complains about three (3) sets of photos. Appellant raised contemporaneous objections in each instance and those objections were overruled by the trial court. Therefore, our review on appeal is for an abuse of discretion. Bench v. State, 2018 OK CR 31, ¶ 59, 431 P.3d 929, 952. Unless a clear abuse of discretion is shown, reversal will not be warranted. Id. 
¶74 Photographs are admissible if their content is relevant and their probative value is not substantially outweighed by their prejudicial effect. Id. at ¶ 61, 431 P.3d at 952. Relevant evidence is defined as "evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." 12 O.S.2011, § 2401. When measuring the relevancy of evidence against its prejudicial effect, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value. Bench, 2018 OK CR 31, ¶ 62, 431 P.3d at 952. Where there is duplication in images, the Appellant has the burden to show that the repetition in images was needless or inflammatory. Id. 
¶75 We have thoroughly reviewed the challenged photographs, State's Exhibits 120(A) and 128, 68 and 189, and 157, 158 and 174. Each of the photographs is relevant in showing a different aspect of the crime scene. See Hogan v. State, 2006 OK CR 19, ¶ 31, 139 P.3d 907, 921. Any duplication in the photographs is minor and not sufficient to qualify as "needless repetition" which can inflame the jury and result in error. See President v. State, 1979 OK CR 114, ¶¶ 9-17, 602 P.2d 222, 225-226. The trial court did not abuse its discretion in admitting the challenged photographs. This proposition is denied.
¶76 In his final proposition of error, Appellant contends the trial court abused its discretion in denying his requested instruction on duress. The trial court's decision regarding jury instructions is reviewed for an abuse of discretion. Soriano v. State, 2011 OK CR 9, ¶ 10, 248 P.3d 381, 387.
¶77 In denying the requested instruction, the trial court relied on Long v. State, 2003 OK CR 14, 74 P.3d 105. Long states that "duress is not a defense to the intentional taking of an innocent life by a threatened person." 2003 OK CR 14, ¶ 12, 74 P.3d at 108. Appellant now seeks to distinguish Long from his case and argues that Long misinterpreted 21 O.S. § 156, regarding the defense of duress, and improperly placed limits on the defense.
¶78 Appellant's case offers no reason to reconsider Long. Appellant has failed to offer any evidence that would have supported a jury instruction on duress. Even assuming arguendo, Appellant was acting under duress, he had ample opportunity to extricate himself from the scene prior to actually killing anyone. "[A] person who fails to avail himself of an opportunity to escape a situation of duress is not entitled to claim the defense." Hawkins v. State, 2002 OK CR 12, ¶ 30, 46 P.3d 139, 146. Further, Appellant offers no authority for his argument that juveniles should be treated differently than adults regarding the assertion of a defense of duress. Based upon the foregoing, the trial court did not abuse its discretion in denying the requested instruction. This proposition is denied.
¶79 Accordingly, this appeal is denied.
DECISION
¶80 The JUDGMENT and SENTENCE is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2020), the MANDATE is ORDERED issued upon the delivery and filing of this decision.
AN APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
THE HONORABLE SHARON HOLMES, DISTRICT JUDGE




APPEARANCES AT TRIAL

APPEARANCES ON APPEAL







CORBIN BREWSTER

CORBIN BREWSTER


MARNY HILL

TULSA COUNTY PUBLIC


TULSA COUNTY PUBLIC

DEFENDER'S OFFICE


DEFENDER'S OFFICE

423 S. BOULDER AVE.,Ste 300


423 S. BOULDER AVE.,Ste 300

TULSA, OK 74103


TULSA, OK 74103

COUNSEL FOR APPELLANT


COUNSEL FOR THE DEFENSE









STEPHEN KUNZWEILER

MIKE HUNTER


DISTRICT ATTORNEY

ATTORNEY GENERAL OF


JULIE DOSS

OKLAHOMA


SARAH McAMIS

JENNIFER L. CRABB


ASST. DISTRICT ATTORNEYS

ASST. ATTORNEY GENERAL


500 S. DENVER

313 N.E. 21ST ST.


TULSA, OK 74103

OKLAHOMA CITY, OK 73105


COUNSEL FOR THE STATE

COUNSEL FOR THE STATE

OPINION BY: LUMPKIN, J. LEWIS, P.J..: CONCUR IN PART/DISSENT IN PART
KUEHN, V.P.J.: CONCUR IN PART/DISSENT IN PART
HUDSON, J.: SPECIALLY CONCURRING
ROWLAND, J.: CONCUR
FOOTNOTES
[1] Appellant must serve 85% of his sentence in each count before becoming eligible for consideration for parole. 21 O.S.Supp.2014, § 13.1.
[2] However, we take this opportunity to note that under 57 O.S.Supp.2018, § 332.7, referred to as the "Forgotten Man Act", the Legislature has enacted procedures to ensure that inmates, other than those serving a life sentence without parole, shall be eligible for consideration for parole.





LEWIS, PRESIDING JUDGE, CONCURRING IN PART AND DISSENTING IN PART:
¶1 I concur in affirming Appellant's convictions but would modify his sentences to comply with Miller v. Alabama, 567 U.S. 460 (2012). The Supreme Court in Miller did not prohibit a state court or jury from ever imposing life without parole on a juvenile homicide offender, but it did hold that a lifetime in prison is disproportionate for all but the rarest juveniles, whose crimes show their permanent incorrigibility or irreparable corruption. See Montgomery v. Louisiana, 136 S.Ct. 718, 734 (2018). Appellant's jury unanimously concluded that he is neither permanently incorrigible nor irreparably corrupt, and sentenced him to five terms of life imprisonment rather than life without parole.
¶2 The trial court's subsequent order that those terms, as well as the sentence of twenty-eight years for assault and battery with intent to kill, be served consecutively effectively "mandated that [this] juvenile die in prison" even if the jury "thought that his youth and its attendant characteristics, along with the nature of his crime," made a punishment with some possibility of eventual release more appropriate. Miller, 567 U.S. at 465. This is the same situation that confronted the Supreme Court in Miller, and the same rule applies. Bever's mandatory punishment[1] of life imprisonment without parole violates the Eighth Amendment.
¶3 The majority avoids the constitutional tension between the jury's Miller findings and the trial court's life-without-parole order with its crime-specific, "no volume discount" theory of punishment,[2] according to which Miller, Graham v. Florida,[3] and logically even Roper v. Simmons,[4] can only limit the State's penalty options when sentencing a juvenile for a single crime. I read those decisions as punishment-specific: Regardless of the crime(s) of conviction, the State may not ordinarily inflict certain penalties on juveniles--the death penalty in Roper, perpetual imprisonment in Graham and Miller--because their lesser culpability, incomplete psychosocial development, and greater capacity for change than adults render those punishments cruel and unusual.
¶4 Appellant must serve thirty-eight years, three months of his first life sentence before he is even eligible to seek parole onto the next one, and so on. 21 O.S.Supp.2015, § 13.1(1); Anderson v. State, 2006 OK CR 6, ¶ 24, 130 P.3d 273, 282-83 (reckoning that a life sentence is equivalent to forty-five years for parole eligibility under the 85% Rule). He thus faces over 215 years in prison without any meaningful opportunity for release. I would either modify the judgment to concurrent sentences, or grant Bever a parole hearing to promptly consider his release from confinement after thirty-eight years, three months from the date of sentencing, and every three years thereafter. See 57 O.S.Supp.2018, § 332.7(E)(1)(granting reconsideration at three year intervals).
¶5 I am authorized to state that Vice Presiding Judge Kuehn joins in this separate writing.
FOOTNOTES
[1] Though Appellant's jury rejected the option of "life without parole" sentences, the trial court's order that all of these sentences be served consecutively produces a mandatory administrative effect rendering Appellant ineligible for release from prison on parole for his natural lifetime, and then some.
[2] See also Martinez v. State, 2019 OK CR 7, ¶ 6, 442 P.3d 154, 156 (holding "each [consecutive] sentence should be analyzed separately to determine whether it comports with the Eighth Amendment"); Detwiler v. State, 2019 OK CR 20, ¶ 6, 449 P.3d 873, 875 (holding Eighth Amendment analysis under Graham and Miller "focuses on the [consecutive] sentence imposed for each specific crime"), and my dissenting opinions in these cases.
[3] 560 U.S. 48 (2010).
[4] 543 U.S. 551 (2005).





KUEHN, V.P.J., CONCURRING IN PART/DISSENTING IN PART:
¶1 This is an unusually disturbing case involving extreme violence and juvenile appellants. The judgment of the trial court is correct and Appellant's conviction must stand, but I dissent to this Court's affirmation of Appellant's consecutive sentences. Imposing five consecutive sentences on a homicide offender without the requisite finding required to sentence a juvenile to life without parole is error.
¶2 Appellant received five life sentences and one sentence of twenty-eight years, which the trial court ordered to run consecutively. I believe that consecutive sentences imposed on a juvenile defendant functionally serves as a sentence of life without parole. Martinez v. State, 2019 OK CR 7¶ 3, 442 P.3d 154, 157 (Lewis, P.J., dissenting). The Pardon and Parole Board measures a life sentence at forty-five years. Because Appellant's sentences are 85% crimes, he would be required to serve 215.05 years before he can be considered for parole. These consecutive sentences guarantee he has no reasonable opportunity for parole and amount to a sentence of life without parole. See Budder v. Addison, 851 F.3d 1047, 1055--56 (10th Cir. 2017) (explaining that "a sentencing court need not use that specific [life without parole] label" for a sentence to fit within that classification); see also Graham v. Florida, 560 U.S. 48, 57, 70 (2010) (explaining that Graham's life sentence would functionally serve life without parole).
¶3 Appellant's jury specifically found that he was not irreparably corrupt or permanently incorrigible. In homicide cases, a juvenile may be sentenced to life without parole only if a jury finds them "irreparably corrupt and permanently incorrigible." Stevens v. State, 2018 OK CR 11, ¶¶ 34-35, 37, 422 P.3d 741, 750; Miller v. Alabama, 567 U.S. 460, 477-78 (2012). Therefore, Appellant lacks the requisite findings to be sentenced to life without parole.
¶4 I would affirm the sentences of the lower court, but modify the terms to be served concurrently. This modification would, as required by the jury's finding, do nothing more than assure Appellant a reasonable opportunity to come before the Pardon and Parole Board after serving 85% of a life sentence. Neither I nor my dissenting colleague forgive the horrid actions of the Appellant, nor would our reasoning guarantee his release during his lifetime. Appellant's jury specifically did not find the only condition which, as they were instructed, could justify life without parole. Considering a 215 year sentence as not equating to life without parole while ignoring the jury's collective decision and juror affidavits for concurrent sentences during sentencing is, as the special concurrence wants to call it, the only "ridiculous" result here.
¶5 If there were any evidence that the jurors desired consecutive sentencing, I am confident the Majority would point it out as justification for denying relief. But since the jury's legal findings and sentiments go against the result the Majority wants to reach, it simply ignores them. I dissent because the result today is contrary to the jury's wishes.
¶6 I am authorized to state Presiding Judge Lewis joins in this separate writing.




 
HUDSON, J., SPECIALLY CONCUR 
¶1 I concur in today's decision. I write separately to address the views expressed in both dissents. Contrary to my colleagues' assertions, "the Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence for multiple crimes." Detwiler v. State, 2019 OK CR 20, ¶ 6, 449 P.3d 873, 875; see also Martinez v. State, 2019 OK CR 7, ¶ 6, 442 P.3d 154, 156. Interpreting the decisions in Miller v. Alabama,[1] Graham v. Florida[2] and Roper v. Simmons[3] using the "punishment-specific" approach championed by the dissent yields the ridiculous consequence of enabling a juvenile offender to in essence circumvent punishment for a crime by committing multiple crimes. See Martinez, 2019 OK CR 7, ¶ 1, 442 P.3d at 157 (Hudson, J., Specially Concur). Oklahoma "is not required to guarantee eventual freedom to a juvenile offender." Id., 2019 OK CR 7, ¶ 8, 442 P.3d at 157 (citing Graham, 560 U.S. at 74). That Bever has subjected himself to a severe penalty "is simply because he committed a great many [ ] offenses." O'Neil v. Vermont, 144 U.S. 323, 331 (1892). This case wholly exemplifies the soundness of this Court's analysis and reasoning in Martinez and Detwiller.
FOOTNOTES
[1] 567 U.S. 460 (2012).
[2] 560 U.S. 48 (2010).
[3] 543 U.S. 551 (2005).





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1991 OK CR 109, 819 P.2d 280, PACK v. STATE
Discussed
 1994 OK CR 40, 876 P.2d 690, SIMPSON v. STATE
Discussed
 2002 OK CR 12, 46 P.3d 139, 73 OBJ 918, HAWKINS v. STATE
Discussed
 2003 OK CR 14, 74 P.3d 105, LONG v. STATE
Discussed at Length
 2006 OK CR 6, 130 P.3d 273, ANDERSON v. STATE
Discussed
 2006 OK CR 19, 139 P.3d 907, HOGAN v. STATE
Discussed
 2006 OK CR 28, 138 P.3d 549, HOWELL v. STATE
Discussed
 2008 OK CR 13, 182 P.3d 842, KING v. STATE
Discussed
 2009 OK CR 15, 207 P.3d 385, ROJEM v. STATE
Discussed
 2011 OK CR 9, 248 P.3d 381, SORIANO v. STATE
Discussed
 2012 OK CR 7, 274 P.3d 161, NELOMS v. STATE
Discussed
 2013 OK CR 1, 293 P.3d 198, MALONE v. STATE
Discussed
 2015 OK CR 11, 358 P.3d 280, SANDERS v. STATE
Discussed at Length
 2016 OK CR 3, 371 P.3d 1100, MARTINEZ v. STATE
Cited
 2016 OK CR 18, 387 P.3d 922, PULLEN v. STATE
Discussed
 2017 OK CR 8, 400 P.3d 781, DUCLOS v. STATE
Discussed at Length
 2017 OK CR 16, 400 P.3d 875, BAIRD v. STATE
Discussed
 2018 OK CR 11, 422 P.3d 741, STEVENS v. STATE
Discussed at Length
 2018 OK CR 31, 431 P.3d 929, BENCH v. STATE
Discussed at Length
 2019 OK CR 7, 442 P.3d 154, MARTINEZ v. STATE
Discussed at Length
 2019 OK CR 15, 446 P.3d 1248, TAFOLLA v. STATE
Discussed at Length
 2019 OK CR 20, 449 P.3d 873, DETWILER v. STATE
Discussed at Length
 2019 OK CR 25, 451 P.3d 566, KELLEY v. STATE
Discussed
 1979 OK CR 114, 602 P.2d 222, PRESIDENT v. STATE
Discussed
 2000 OK CR 17, 12 P.3d 20, 71 OBJ 2286, Young v. State
Discussed
 1987 OK CR 177, 742 P.2d 1138, HARVELL v. STATE
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2401, Relevant Evidence Defined
Cited
Title 20. Courts
 Cite
Name
Level

 20 O.S. 3001.1, Setting Aside Judgment on Ground of Misdirection of Jury or Error in Pleading or Procedure
Cited
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 13.1, Required Service of Minimum Percentage of Sentence - Offenses Specified
Discussed
 21 O.S. 156, Defense of Duress
Cited
 21 O.S. 652, Shooting with Intent to Kill - Assault and Battery with Deadly Weapon, etc.
Cited
 21 O.S. 701.7, Murder in the First Degree
Cited
 21 O.S. 701.9, Punishment for First Degree Murder - Penalty for Second Degree
Cited
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 926.1, Circumstances Where Jury Declares Punishment
Cited
 22 O.S. 976, Multiple Offenses - Consecutive or Concurrent Sentences - State Funds
Discussed at Length
Title 57. Prisons and Reformatories
 Cite
Name
Level

 57 O.S. 332.7, Persons Eligible for Consideration for Parole - Inquiry - Recommendation to Governor - Administrative Parole
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA